WALTER SMITH, JOHN CARTER, WILLIAM S. NICHOLLS AND OTHERS,
    SURVIVORS OF CLEMENT SMITH, DECEASED, PLAINTIFFS IN ERROR,
    *v.* DENNIS CONDRY.

When a collision of vessels occurs in an English port, the rights of the parties
    depend upon the provisions of the British statutes then in force; and if
    doubts exist as to their true construction, this court will adopt that which is
    sanctioned by their own courts.
By the English statutes as interpreted in their courts, the master or owner of a
    vessel, trading to or from the port of Liverpool, is not answerable for da-
    mages occasioned by the fault of the pilot.
The actual damage sustained by the party at the time and place of injury, and
    not probable profits at the port of destination, ought to be the measure of
    value in damages, in cases of collision as well as in cases of insurance.
By whose fault the accident happened, is a question of fact for the jury, to be
    decided by them upon the whole of the evidence.

THIS case came up, by writ of error, from the Circuit Court of
the United States, for the District of Columbia, and was argued
at January term, 1842. The court held it under a *curia ad-
visare vult,* and pronounced their decision at the present term.

The facts in the case were these.

The plaintiffs in error, who were also plaintiffs in the court
below, were the owners of a vessel called the Francis Depau,

which was lying in the port of Liverpool, on the 15th of February, 1838, loaded and ready for sea. The barque Tasso, owned by the defendant, in coming out of the docks, ran foul of the Francis Depau and occasioned considerable damage. A suit was brought in consequence, and upon the trial the verdict of the jury was for the defendant. The following bills of exception were taken by the plaintiffs, upon which the case was brought up.

-Plaintiffs' first bill of exceptions:

In the progress of this cause, the plaintiffs having offered evidence to prove that on the 15th of February, 1838, the barque Tasso, the property of defendant, in coming out of the dock at Liverpool, on her way to sea in the prosecution of her homeward voyage to the United States, ran foul of and occasioned damage to the Francis Depau, a ship belonging to plaintiffs, and inflicted damage and injury upon the vessel of the said plaintiffs; and having further given evidence tending to prove that said collision was the result of unskilful management on the part of the Tasso.

The defendant gave in evidence the statutes of 37 Geo. 3, c. 78; 52 Geo. 3, c. 39, and 6 Geo. 4, c. 125; and further proved that there was on board the Tasso, at the time of her moving from the dock and until after said collision, a regularly licensed pilot of said port of Liverpool; that the said vessel was under the management and direction of said pilot, and that the directions and orders of said pilot were followed and obeyed on board said vessel, the Tasso; that the master of the Tasso was not on board her during the time of her moving from said dock into the river; and that such absence of the master was usual and customary on such occasions.

The defendant upon said evidence prayed the court to instruct the jury, that by the true construction of the statutes of Great Britain, 37 Geo. 3, c. 78; 52 Geo. 3, c. 39, and the 6 Geo. 4, c. 125, produced on the trial, the defendant is not responsible to the plaintiffs in this action for any damage occasioned by the default, negligence, or unskilfulness of the pilot proved to have been on board the Tasso; which opinion the court gave as prayed, to which the plaintiffs, by their counsel, excepted.

Plaintiffs' second bill of exceptions.

In the trial of this cause the plaintiffs produced a competent witness, and offered to prove that the ship of the plaintiff, mentioned in the declaration, at the time of the injury complained of, was loaded with salt and ready to sail for the Georgetown market, and that if the ship had then sailed she would in due course have arrived in Georgetown (as was intended when her lading was taken in) in due time for the sale of the cargo at the fishing season of the Potomac river, when there is a great demand for salt; and that the loss occasioned by the injury in the delay of the vessel, preventing her arrival till after the fishing season, as she was compelled to unload and take in another cargo of salt, amounted to between 10 and 11 cents per bushel, making the loss in the whole cargo $2101 20, and contended that they should be allowed to give this evidence and to recover damages for the said loss, estimating the salt by the price at Georgetown in the fishing season when the vessel would have arrived.

But the court refused to allow the said evidence to be given by the plaintiffs, to which the plaintiffs, by their counsel, excepted.

Plaintiffs' third bill of exceptions.

And the plaintiffs having, after the foregoing evidence, farther offered evidence to prove that it is the usage of vessels coming out of the docks of Liverpool into the river to have their anchors slung in a tackle ready to be thrust over the bows, and in a situation to be dropped immediately on passing through the lock connecting the lock with the basin, and before passing from the latter into the river; that the anchor was not put over the bow nor attempted to be so done in the present case, on board the Tasso, until this vessel had passed into the river and was approaching the Francis Depau; and the defendant having offered in evidence the deposition of Frederick Lewis to prove that the Tasso, in passing from the basin through the piers thereof into the river had the said vessel in check by a hawser extending therefrom to one of the said piers, which hawser parted as the vessel cleared the pier head, and that the fish pennant or tackle suspending the anchors of said vessel broke in the attempt to get them over the bow of the vessel as aforesaid, and they thereupon fell upon the deck of the vessel; and the plaintiffs having further offered evidence by the pilot of the Francis Depau, to prove that defendant's

vessel appeared badly furnished, and that the mate thereof (the master being absent) at the time, declared that he had not a rope on board fit to hang a cat.

And in a further trial of this cause, the plaintiffs, after the depositions for the plaintiffs' and defendant were read, having offered evidence to show that in the management of a vessel when the fish tackle breaks, and it is important that the anchor should be thrown out, that it ought to be and can be accomplished in a short time by fixing another rope by a strop to the anchor and heaving it over the bows, and that such new fixture can be applied in a minute or two.

And the defendant having offered the following prayer—

"That if the jury shall believe from the evidence that the collision between the Tasso and the Francis Depau was occasioned by the breaking of her hawser and fish tackle, yet, from the said facts, the jury are not warranted in inferring that the said vessel, the Tasso, at the time of her sailing, was unseaworthy,"

The court gave the instruction as prayed, to which the plaintiffs, by their counsel, excepted. And the plaintiffs then prayed the court to instruct the jury, that if they believe from the evidence that the collision took place as above stated, then such breaking of the said hawser and tackle is no excuse for the collision on the part of the defendants; which the court refused, to which refusal also the plaintiffs excepted.

Mr. Chief Justice TANEY delivered the opinion of the court.

This case arises from a collision in the port of Liverpool, between the barque Tasso, and the ship Francis Depau, in which the latter sustained considerable injury. The vessels were both American; the Francis Depau being owned by the plaintiffs in error, and the Tasso by the defendant.

It appears from the evidence, that at the time the accident happened, the Tasso was in charge of a regular pilot, leaving the Prince's dock on her homeward voyage; and the Francis Depau was at anchor in the harbour, laden with salt, and ready to sail. And in order to prove that the injury arose from the unskilful management of the Tasso, the plaintiffs offered in evidence that it is the usage of vessels coming out of the docks of Liverpool into the river, to have their anchors slung in tackle, ready to be

thrust over the bows, and in a situation to be dropped immediately on passing through the lock which connects the dock with the basin, and before passing from the latter into the river; and that the anchor of the Tasso was not put over the bow, nor was it attempted to be done, until she had passed into the river, and was approaching the Francis Depau.

The defendant then offered testimony to show that in passing from the basin, between the piers into the river, the Tasso was held in check by a hawser fastened to one of the piers, but that the hawser broke just as the vessel cleared the pier head; and the pilot perceiving that she was approaching the plaintiffs' ship, thereupon gave orders to get an anchor ready. The anchors were accordingly fixed as soon as possible, in the manner that is customary in going out of the port; and an attempt was made to get one of them over the side, but the tackle broke, and both anchors fell on deck, and the vessel struck the Francis Depau, and thereby occasioned the injury for which this suit is brought; that every thing was done on board the Tasso, according to the directions of the pilot, and every effort made to prevent the collision; but that it was blowing fresh, and the tide setting towards the plaintiffs' ship, and the Tasso would not mind her helm.

To rebut this testimony, the plaintiff offered in evidence, by the pilot, that the defendant's vessel appeared to be badly furnished, and that at the time the accident happened, the mate who had charge of her under the pilot, (the master being absent,) declared that he had not a rope on board fit to hang a cat; and further offered in evidence, that where the fish tackle breaks, and it is important that the anchor should be thrown out, it can be accomplished in a minute or two, by fixing another rope by a strop to the anchor, and heaving it over the bows.

At the trial, several exceptions were taken by the plaintiffs to different instructions given by the court to the jury; and the verdict and judgment in the Circuit Court having been in favour of the defendant, the case has been brought here for revision by a writ of error sued out by the plaintiffs. We proceed to examine the directions excepted to, in the order in which they appear in the record.

Upon the evidence above stated, the defendant asked the court to instruct the jury that under the statutes of Great Britain, of

the 37 Geo. 3, c. 78; 52 Geo. 3, c. 39, and 6th of Geo. 4, c. 125, the defendant was not responsible for any damage occasioned by the default, negligence, or unskilfulness of the pilot. The court gave this instruction, and that is the subject of the first exception.

The collision having taken place in the port of Liverpool, the rights of the parties depend upon the provisions of the British statutes, then in force; and if doubts exist as to their true construction, we must of course adopt that which is sanctioned by their own courts.

The 52 Geo. 3, mentioned in this exception, is a general act, for the regulation of pilots and pilotage, within the limits specified in the law, and requires the masters of vessels under a certain penalty to take a pilot, and provides that no owner or master shall be answerable for any loss or damage, nor be prevented from recovering on any contract of insurance, by reason of any default, or neglect on the part of the pilot. But this statute did not repeal the previous one of 37 Geo. 3, for the regulation of pilots conducting ships into and out of the port of Liverpool; and the last-mentioned law required the master to pay full pilotage to the first who should offer his services, whether he was employed or not. This act did not, however, impose any penalty for refusal; and contained no clause exempting the master and owner from liability for loss or damage arising from the default of the pilot, where one was taken on board.

Upon these acts of Parliament, the Court of King's Bench held, in the case of Caruthers v. Sydebotham, 4 Maule and Selw. 77, that the master or owner of a vessel trading to and from the port of Liverpool, was not answerable for damages occasioned by the fault of the pilot. But in the case of the Attorney-General v. Case, 3 Price, 302, the same question was discussed in the argument before the Court of Exchequer, and it appears to have been the opinion of that court, that the master and owner were liable in the same manner as if the pilot had not been on board.

The question, it is true, did not necessarily arise in the last-mentioned case, for the vessel was at anchor in the river Mersey when the disaster happened; and a vessel at anchor was not bound to have a pilot on board. If in that situation the master thought proper to employ one, the pilot was undoubtedly his agent, and consequently he was responsible for his acts. But in

deciding the case, the court expressed their opinions on the two statutes of Geo. 3, before mentioned, in cases where pilots were required to be on board; and held that the provisions of the 52 Geo. 3, exempting masters and owners from liability, did not extend to cases embraced by the local pilot act for Liverpool; and strongly intimated that there was a distinction between the obligation to take a pilot under a penalty, and the obligation to pay full pilotage to the first that offered, whether he was taken or not.

Since these decisions were made in the King's Bench and Exchequer, the 37th Geo. 3 has been repealed by the 5th of Geo. 4, and the 52 Geo. 3 has been repealed by the general pilot act of the 6th of Geo. 4; and these two statutes of Geo. 4 were the laws in force at the time of the collision in question. But although some changes were made in the Liverpool pilot act in the first-mentioned statute, and in the general pilot law by the second, yet in regard to the subject now under consideration, these two statutes are the same in substance with the preceding ones which they respectively repealed; and the adjudged cases above mentioned apply with the same force to the question before us, as if they had been made since the passage of the acts of Geo. 4.

In determining, however, the true construction of these acts of Parliament, we are not left to decide between the conflicting opinions of the King's Bench and Court of Exchequer. The same question has since, on more than one occasion, arisen in the British Court of Admiralty, and the decision in the King's Bench has been constantly sustained; and we presume it is now regarded as the settled construction of these pilot acts. Abb. on Ship. (Shee's edition,) 184, n. z; The Maria, 1 Rob. New Admiralty Reports, 95; The Protector, 1 Rob. New Adm. Rep. 45; The Diana, 1 Rob. New Adm. Rep. We think, therefore, that the Circuit Court was right in the first instruction given to the jury.

The second also is free from objection. The question there was as to the rule of damages in case the plaintiffs should show themselves entitled to a verdict. They offered to prove that if the ship had not been prevented from sailing by the injury complained of, she would in due course have arrived in Georgetown (as was intended when the lading was taken in) in time for the sale of her cargo at the fishing season in the Potomac river, when

Smith et al. *v.* Condry.

there is a great demand for salt; that the injury delayed her, and prevented her arrival until the season was over, and thereby made a difference of ten or eleven cents per bushel in the value of the salt at her home port, and occasioned a loss upon the cargo of $2101 20. The defendant objected to this testimony, and the court refused to admit it.

It has been repeatedly decided in cases of insurance, that the insured cannot recover for the loss of probable profits at the port of destination, and that the value of the goods at the place of shipment is the measure of compensation.   There can be no good reason for establishing a different rule in cases of loss by collision.   It is the actual damage sustained by the party at the time and place of the injury that is the measure of damages.

The third and last exception was taken to an instruction given upon the prayer of the defendant, and also to the refusal of the court to give a direction asked for by the plaintiffs.   The defendant prayed the court to instruct the jury, that if they believed that the collision was occasioned by the breaking of the hawser and fish tackle, yet from those facts the jury were not warranted in inferring that the Tasso at the time of her sailing was unseaworthy; which direction the court gave.   And thereupon the plaintiff prayed the court to instruct the jury, that if they believed the collision took place as above stated, then such breaking of the hawser and tackle is no excuse for it on the part of the defendant; and this direction the court refused to give.

Now these two prayers involve the same principles, and are both liable to the same objections.   By whose fault the accident happened was a question of fact to be decided by the jury upon the whole evidence before them.   And the error in the prayer on the part of the plaintiffs, as well as that offered by the defendant, consists in this, that it sought to withdraw from the jury the decision of the fact, and asked the court to instruct them, as a matter of law, upon the sufficiency or insufficiency of certain evidence offered to prove it; and both prayers are still more objectionable because each of them asks the instruction upon a part only of the testimony, leaving out of view various other portions of it which the jury were bound to consider in forming their verdict.   If the collision was the fault of the pilot alone, then the owners of the Tasso are not answerable.   But if it was altogether

or in part caused by the misconduct, negligence, or unskilfulness of the master or mariners, the owner is liable. And if the equipments and tackle were in this case insufficient, and not as strong and safe as those ordinarily used for such vessels in such cases, and thereby rendered the care and skill of the pilot unavailing, it was undoubtedly the fault of the master or owner; and is equally inexcusable as the omission to provide a competent crew. And it was for the jury upon the whole evidence to say whether it was the result of accident, arising from strong wind and tide, against which ordinary skill and care could not have guarded; or the fault of the pilot; or the misconduct, negligence, or unskilfulness of the crew; or the insufficiency of the hawser, ropes, or equipments with which the vessel was furnished. In the two first instances the owner of the Tasso is not answerable; in the two latter he is. The court, therefore, were right in refusing the direction asked for by the plaintiffs, but erred in giving the one before mentioned at the request of the defendants. And for this reason the judgment of the Circuit Court must be reversed.

### ORDER.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States, for the District of Columbia, holden in and for the county of Washington, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be and the same is hereby reversed, with costs, and that this cause be and the same is hereby remanded to the said Circuit Court, with directions to award a *venire facias de novo.*