HENRY W. RIPLEY vs. WILLIAM F. MOSELY & another.

In an action of debt on a bond conditioned " to fully indemnify and save harmless " the plaintiff "from all loss, damage, and harm whatsoever, by reason of a suit for the infringement of any patent, in selling paper collars which the plaintiff has had or may hereafter have of the defendants;" and to "pay all fair and reasonable charges for expenses in defending said suit," *Held*, that the plaintiff is entitled to recover damages, (1) for the depreciation of his stock of goods while necessarily withheld from sale by the attachment made on the writ in the suit for infringement ; (2) for the reasonable debt contracted, though not yet paid, for the services of counsel in defending the suit ; and (3) for the reasonable expenses of himself and counsel incurred in relieving his stock from the attachment.

No damages are recoverable in such action for (1) loss of probable profits during the time the plaintiff's stock was under the control of the attaching officer ; (2) loss of probable net profits while the store remained closed in consequence of the plaintiff's illness contracted while trying to relieve the stock from the attachment ; (3) for the diminution of profits consequent upon the reduction of the stock ; (4) for the prospective damages arising from loss of mercantile credit caused by the attachment ; and (5) for the expenses of the plaintiff and his counsel in procuring the defendants to enter into the bond in suit.

ON EXCEPTIONS to the rulings of *Goddard*, J., of the superior court for this county.

DEBT on a bond, dated Jan. 10, 1868, given by the defendants to the plaintiff, in the penal sum of $3000. The conditions of the bond appear in the opinion.

The action was tried by the justice of the superior court without the intervention of a jury, from whose report it appears that in 1867, the plaintiff, a dealer in gentlemen's clothing, was also the defendants' agent, in this State, for the sale of paper collars; that the Union Paper Collar Company, claiming that the defendants had infringed their patent, threatened them and their agent with suit, and on Dec. 17, 1867, sued the plaintiff in United States circuit court for this district, for selling the defendants' collars in this State, claiming damages in the sum of $6000, and attached the plaintiff's entire stock of clothing; that the stock remained in the marshal's possession until Jan. 6, 1868, when it was surrendered to the plaintiff on

receipt of a note in the usual form for $3000, signed by Whittier & Avery, of that date, payable to the marshal in case of the non-delivery of the goods on demand: that the plaintiff thereupon went to New York and obtained from the defendants the bond in suit; that he returned home Jan. 16th, but did not in fact open his store until Feb. 1st; that the suit against him is still pending and the attachment remaining; that on Jan. 6, 1868, the plaintiff mortgaged his stock to the signers of the receipt note as security, which mortgage was duly recorded and is still in force; and that the plaintiff went to New York in December, 1867, to consult the defendants relative to the suit in the circuit court.

In addition to the foregoing facts, the presiding justice found, as matter of fact,—

1. That the plaintiff exerted his utmost efforts to obtain the release of his stock from the time of attachment until Jan. 6th, and that he immediately notified defendants of said attachment, and that he was guilty of no laches or negligence in not sooner obtaining said release.

2. That the mortgage was required by Mr. Whittier before signing the note; and that the note was required by the marshal before he would release the goods.

3. That plaintiff's journeys to New York were rendered necessary by said attachment.

4. That plaintiff was guilty of no laches or negligence in not sooner reopening his store, being prevented by severe sickness contracted in his return from New York.

5. That it was reasonable and necessary for plaintiff to employ counsel to assist him on his last visit to New York by reason of said attachment, and that he took counsel with him for that purpose; and that the bond in question was obtained by plaintiff and his counsel on that visit.

6. That plaintiff's personal necessary traveling expenses of said visits were $125.

7. That the reasonable charges of his counsel to and at New York on said business, although yet unpaid, were $100.

8. That plaintiff's store was in the marshal's exclusive possession for eighteen days, exclusive of Sundays, during which period the expense of fuel and gas continued and were necessary, but plaintiff was totally deprived of profit from his business; and I find that he was thereby the loser of his probable gross profits, which I find to have been $9.16 daily, viz., $164.88.

9. That plaintiff's store was closed after redelivery of the key to him, twenty-two days, exclusive of Sundays, during which period plaintiff's expense for fuel and gas ceased, which expense I find to have been daily thirty cents, and that he was, by reason of the same, loser of his probable net profits, which I find to have been $8.84 daily, viz., $194.48.

10. That the reasonable charges of plaintiff's counsel, also unpaid, for retainer and time, fees in defense of said suit in the United States court, up to the commencement of this action, were $150,—also unpaid.

11. That said counsel's reasonable charges for correspondence with defendants, and with counsel of Union Paper Collar Company, in Boston, and efforts to obtain release of said stock before giving of the bond, by getting a receipter in Portland after defendants had failed to do so, and furnishing a receipter, $100.

12. That plaintiff's stock at the time of attachment was worth $2,750, and that $2,500 worth of it has been retained, and is still unsold, by plaintiff, and that the depreciation thereon is twenty-five per cent, viz., $625.

13. That plaintiff did, in fact, retain and withhold from sale said stock, or $2,500 thereof, on account of the mortgage which Mr. Whittier had required him to give as security for his note.

14. That from the reopening of plaintiff's store, Feb. 1st, 1868, until and including this day, Feb. 15th, 1869, a period of 324 business days (excluding Sundays and two holidays), plaintiff's gross profits were diminished an average of $5.39 daily, being a direct loss to plaintiff of $5.00 a day, being, for the period, $1,620.

15. That this loss was occasioned by two causes: the withdrawal of his entire stock from sale, and the total destruction of his credit,

which has prevented him from buying except in very small and unprofitable quantities.

16. That plaintiff's credit was good and ample for all the demands of his business, until the attachment of his stock by the Paper Collar Company, Dec. 17th, 1867.

17. That his credit was, by said attachment, annihilated, and has so remained ever since, is admitted by defendants' attorney.

18. That the total loss of plaintiff's credit as a business man is prospectively a damage to him (exclusive of previous losses, and on the hypothesis of the immediate withdrawal of the attachment and suit against him in the United States court) of $1,000.

19. That the reasonable charges of plaintiff's counsel, unpaid, in this suit, are $50.

20. And I find that plaintiff has been throughout without fault, neglect, or laches, and that said losses have been occasioned him by reason of the cause above named.

. The presiding justice ruled as matter of law :

1. That items 8, 9, 12, 14, and 18 were items of "loss, damage, and harm, by reason of" said "action at law" "prosecuted against the plaintiff" in the United States court for the infringement of a patent, in selling collars which the plaintiff had of the defendants.

2. That items 6, 7, 10, and 11 are "fair and reasonable charges for expenses in defending said action."

3. That as such, said items, viz., 6, 7, 8, 9, 10, 11, 12, 14, and 18, amounting to $4,129.36, are covered by said bond to the extent of its penalty.

4. That item 19 is not covered by the bond.

5. That the plaintiff is entitled to recover, for breach of the bond, the sum of $3,000.

To the rulings numbered 1, 2, 3, and 5, the defendant alleged exceptions.

*Davis & Drummond,* in support of the exceptions, cited 2 Greenl. on Ev., § 256; *Marble* v. *Worcester,* 4 Gray, 395; *Benson* v. *Malden & Melrose G. L. Co.,* 6 Allen, 149; *Smith* v. *Way,* 6 Allen,

---

Ripley *v.* Mosely.

---

212; *Brown* v. *Cummings*, 7 Allen, 507; *Watson* v. *Ambergate Railway Co.*, 3 Eng. L. & Eq. 497; *Gee* v. *Lancashire & Yorkshire Railway Co.*, 6 Hurl. & Norm. 211; *Gen. Mutual Ins. Co.* v. *Sherwood*, 14 Howard, 351; *Barrett* v. *Blanchard*, 13 Gray, 429; *Ingledew* v. *Northern Railway Co.*, 7 Gray, 86; *Livil* v. *Johnson*, 12 East, 653; *Longfellow* v. *Quimby*, 29 Maine, 196, 205; *Armstrong* v. *Percy*, 5 Wend. 535, 538; *Blanchard* v. *Ely*, 21 Wend. 342; *Griffin* v. *Colser*, 16 N. Y. 496; *Boyd* v. *Brown*, 17 Pick. 453, 461; *Smith* v. *Candey*, 1 How. 28; *Brown* v. *Smith*, 12 Cush. 366; *Berry* v. *Dwinel*, 44 Maine, 255, 268, 269; *Griffin* v. *Colser*, 16 N. Y. 689; *Masterton* v. *Brooklyn*, 7 Hill, 62; *Hadley* v. *Braxendale*, 26 Eng. L. & Eq. 398; *Worcester* v. *Great Falls Manf. Co.*, 41 Maine, 159; *Bridges* v. *Stickney*, 38 Maine, 361; *Fox* v. *Harding*, 7 Cush. 516; *P. W. & B. R. R. Co.* v. *Howard*, 13 Ken. 307; *Cram* v. *Dresser*, 2 Sandford, 127; *Loker* v. *Damon*, 17 Pick. 288; *Sibley* v. *Hoar*, 4 Gray, 222; *Thompson* v. *Shattuck*, 6 Met. 615; *Waite* v. *Gilbert*, 10 Cush. 177; *Brown* v. *Smith*, 12 Cush. 366; *Warner* v. *Bacon*, 8 Gray, 397; *Willey* v. *Frederics*, 10 Gray, 357; *Adams* v. *Barry*, 10 Gray, 361; *Baldwin* v. *Western R. R. Co.*, 4 Gray, 333; *Parker* v. *Lovell*, 11 Gray, 353; *Cutting* v. *Grand T. Railway Co.*, 13 Allen, 321.

*L. D. M. Sweat*, for the plaintiff, elaborately advocated the correctness of the rulings, *inter alia*, from the intentions of the parties indicated by the facts and circumstances as they existed at the time the bond was executed; and cited 2 Kent's Com. (11th Ed.), 555, 256; *Gennings* v. *Norton*, 35 Maine, 308; *Gennings* v. *Norton*, 4 N. H. 497; Bouvier's L. Dict., Damages.

BARROWS, J.   The condition of the bond here in suit provides that the defendants shall pay to the plaintiff " the just and full sum of three thousand dollars or so much thereof as shall be necessary to fully indemnify and save harmless the said Ripley from all loss, damage, and harm whatsoever, by reason of any suit or action at law or in equity that has been, or may hereafter be, prosecuted against

Ripley *v.* Mosely.

the said Ripley by the Union Paper Collar Company of New York, or others, for the infringement of any patent, in selling paper collars which the said Ripley has had or may hereafter have of said Moseley & Tynberg," and also that the said Moseley & Tynberg "shall pay to said Ripley all fair and reasonable charges for expenses in defending said suits or actions."

The bond was given Jan. 10th, 1868.

The presiding judge in the court below, before whom the case was tried without the intervention of a jury, finds that, in 1867, the plaintiff, a dealer in gentlemen's clothing, was the agent of the defendants in Maine for the sale of paper collars; that the Union Paper Collar Company commenced a suit against the plaintiff for an alleged infringement of their patent in the sale of these collars, and on Dec. 17, 1867, attached upon their writ in that suit the plaintiff's entire stock of goods of the value of $2,750; that plaintiff immediately notified defendants of the attachment, and used his best efforts to procure the release of his stock from attachment, but was unable to do so until Jan. 6, 1868, when he succeeded in procuring receiptors only by mortgaging the stock to secure them; that plaintiff incurred reasonable and necessary expenses in two visits to the defendants at New York, the last time with counsel, resulting in the giving of the bond in suit; that plaintiff contracted a severe illness on his return from New York, in consequence of which his store remained closed until the first of February, 1868; that his business credit which was previously good was destroyed by the attachment; that he has been obliged to retain the greater part of the goods mortgaged to secure his receiptors, and that the goods have depreciated twenty-five per cent; that he lost the profits of his store during the time it remained closed, and that they have been greatly diminished since on account of the reduction of his stock caused by the attachment and mortgage and the consequent loss of credit.

The suit of the Union Paper Collar Company against the plaintiff is still pending and undecided, and plaintiff has actually paid nothing as yet on account of it, except as above stated, though he has become liable for counsel fees to a considerable amount.

Hereupon the judge assessed the damages accruing from all the matters and things above recited, in detail, and, including an additional item of $1,000 for the prospective injury to him in "the total loss of the plaintiff's credit as a business man exclusive of previous losses, and on the hypothesis of the immediate withdrawal of the suit," found the sum total to be $4,129.36, and ordered judgment and execution for $3,000, that being the amount of the penalty named in the bond and of the ad damnum in the writ.

The defendants excepted.

The language of the bond is general and comprehensive, and the plaintiff is entitled to recover all damages which he can legally be deemed to have suffered by reason of the suit, together with the expenses incurred in defending it so far as they are found "fair and reasonable,"—these last being expressly provided for.

We think that under the latter clause in the condition, the debt contracted by the plaintiff to counsel for services in defending the suit against him, though not yet paid, is a proper subject for allowance in making up the damages. The course pursued was undoubtedly contemplated by both parties. The defendants do not appear to have employed any counsel to defend the suit; and they bound themselves to pay " all fair and reasonable charges for expenses in defending." Ripley was to be saved harmless not only from any judgment that the Union Paper Collar Company might recover against him for damages and costs, but also from expense in defending the suit. He has not been saved harmless in the matter of these expenses, but has been forced to incur an indebtedness which the defendants should have provided means to discharge. So in *Lyman* v. *Lull*, 4 N. H. 495, where the bond was conditioned to save harmless and indemnify a town "from all manner of expenses, damages, costs, and charges which should be imposed upon said town by reason of the maintenance, education, and support of" an illegitimate child; the overseers being called on for support, agreed with a person to take care of the child for a certain sum per week, and the child had been supported several weeks under the agreement, but nothing had been actually paid by the town; and it was held, that

there was a breach of the bond, and that the support promised but not paid for should be reckoned in assessing the damages.

Nor do we think it can be maintained that the depreciation of the plaintiff's stock, while it has been necessarily withheld from sale on account of the attachment, is not a legitimate subject of damages recoverable here. The attachment of the stock was a natural and common incident of the suit. The plaintiff did his best to procure its release, but was unable to effect it upon any terms which permitted him to make sale of the goods. Their depreciation is a matter capable of being definitely ascertained. The loss is neither speculative nor dependent upon contingencies, and is one of the natural and direct results of the suit. The plaintiff's stock was taken from him. In the natural course of things it is diminished in value by the lapse of time. It is a loss to him as much as if a portion of it were sold. If the defendants would have relieved themselves from a liability for such loss they should have prevented the detention.

And we are of opinion that the reasonable expense of himself and counsel incurred by the plaintiff in the effort to release his property from attachment, is also recoverable,—but not that which was incurred for the purpose of procuring the defendants to enter into the contract of indemnity.

And with regard to all the other items which go to make up the damages assessed, we think them either too remote and uncertain, or too much complicated with other intervening efficient causes, to be allowed in this suit.

They do not seem to us to be either the direct and natural consequences of the suit, or to be such losses as may reasonably be supposed to have been in the contemplation of both parties at the time the agreement was entered into. No small part of them accrued by reason of other efficient proximate causes, the force and effect of which cannot be estimated; nor can the damages accruing from the combination be apportioned.

The object of the bond was to reimburse the plaintiff for so much property as should be taken from him by reason of the suit and for

the expenses of defending it.    It cannot be so extended as to re-lieve the plaintiff from all the consequences of his own unfortunate or unwise management since, though he may have fallen into the mistakes or met with the misfortunes in consequence of the suit op-erating as a remote cause.

But the damages thence resulting are consequences of conse-quences, and not legally computable.   Very manifestly, even if there were no other element of uncertainty, this should prevent the al-lowance made for loss of probable profits during the time that the store remained closed in consequence of the plaintiff's illness con-tracted on his return from New York; and for the diminution of profits consequent upon the reduction of his stock; and for the pro-spective damages arising from loss of mercantile credit.    Much of the reasoning in *Hayden* v. *Cabot*, 17 Mass. 169 is applicable in this case.  See also, *Gee* v. *Lancashire & Yorkshire Railway Co.*, 6 Hurl. & Norm. 211; *Smith* v. *Condry*, 1 How. 28; *Blanchard* v. *Ely*, 21 Wendell, 342; *Griffin* v. *Colver*, 16 N. Y. 491, for rules and prin-ciples which should be regarded in assessing the damages here.

It is argued that the judge in the court below found, as matter of fact, that all these results were the necessary and unavoidable con-sequences of the suit, and that his finding as to matters of fact is conclusive.

Such finding as to a pure question of fact is conclusive; but where the finding necessarily embraces an untenable legal proposition, it must be disregarded.

It is impossible that it can have been legally ascertained that, in addition to the items which we have indicated as properly entering into the computation, there have been losses of probable profits, and losses by destruction of credit, amounting to the sum of $2,979.36, which can be legally said to have occurred by reason of an attach-ment of goods which still remain the property of the plaintiff, and the total value of which was but $2,750 in the outset.

*Exceptions sustained.*

APPLETON, C. J.; DICKERSON, CUTTING, TAPLEY, and DAN-FORTH, JJ., concurred.