## THE SAM BROWN.

## THE JOSEPH A. STONE.

### PHOENIX INS. Co. *v.* THE SAM BROWN and another.

*(District Court, W. D. Pennsylvania. January 6, 1887.)*

1. COLLISION — STEAMERS—RULES OF NAVIGATION—LOSS OF CARGO—DAMAGES.
   Where two steamers, approaching each other from opposite directions, both failed to comply with a rule of navigation, and in consequence a collision ensued, in a suit against the two boats, the damages resulting to the owner of a cargo in the charge of one of them will be equally divided between the boats.

2. SAME—MEASURE OF DAMAGES.
   Where a cargo is thus lost by a collision, in a suit against the wrong-doer, standing in no contract relation to the party injured, the prevailing rule is to allow only the actual damages sustained at the time and place of the loss, with interest thereon.

3. SAME—SUIT AGAINST BOTH VESSELS.
   And this latter rule applies where, for such loss, the injured party elects to bring a joint suit against two colliding boats, one of which stands in such contract relation to him, and the other not; the damages in such joint suit being assessable on the footing of the marine tort, for which both boats are answerable, and not on the basis of the contract, to which one of the boats is a stranger.

4. CARRIERS—OF GOODS—LOSS—DAMAGES.
   In the case of carriers or others under contract to deliver goods, the measure of damages for their loss *in transitu* is their net market value at the place of destination, at the time when they should have arrived there.

In Admiralty.
*Knox & Reed,* for libelant.
*Barton & Sons,* for the Brown.
*J. S. Ferguson,* for the Stone.

ACHESON, J. 1. It cannot be alleged seriously that the collision here was unavoidable. Beyond controversy, it was due to negligence. Indeed, each boat seeks exoneration by casting the blame upon the other. The night was calm, clear, and bright. The boats were distinctly visible to each other when at least a mile apart. The stage of water was not less than 12 feet, and the witnesses agree that there was ample room for the

boats to pass each other safely. Why, then, the collision? A careful consideration of the proofs has brought me to the conclusion that both boats were in fault. The first rule governing navigation, and covering the case of steamers approaching each other from opposite directions, after prescribing the signals touching choice of sides, and declaring that pilots shall not attempt to pass each other until there has been a thorough understanding as to the side each steamer shall take, proceeds thus: "The signals for passing must be made, answered, and understood before the steamers have arrived at a distance of eight hundred yards of each other." Had this rule been observed here, the collision would have been avoided. According to the weight of the evidence, direct and circumstantial, the boats were much less than 800 yards apart when the Stone gave the first signal for choice of sides. To that signal the Brown made no response. Nevertheless the boats continued to approach each other until they were within a distance of from 100 to 150 yards, and perhaps even less, when the pilot of the Brown, perceiving that a collision was imminent, gave the danger signals; but before the headway of either boat was stopped the collision occurred. I think neither boat observed due precautions to avoid the catastrophe, and both violated the provisions of the above-mentioned rule. Therefore both boats are responsible for the disaster, and the damages from the loss of the cargo of coke must be divided equally between them. *The America,* 92 U. S. 432.

2. In the case of carriers, or others under contract to deliver goods, the measure of damages for the loss thereof *en route* is their net market value at the place of destination, at the time when they should have arrived there; and such damages might have been recovered in a suit brought against the Brown alone, as that boat was under a towing contract to transport the coke to Louisville. But the libelant has elected to sue the two colliding boats together as jointly answerable, and it seems to me that in such joint suit no greater damages are allowable than could have been recovered against the Stone had that boat alone been sued. In other words, the damages are to be assessed upon the footing of the marine tort, for which both boats are answerable, and not on the footing of a contract to which the Stone was a stranger. Now, where the cargo is lost *in transitu* by a collision, in a suit against the wrong-doer, standing in no contract relation to the party injured, the prevailing rule is to allow only the actual damages sustained at the time and place of the injury, with interest thereon. *The Apollon,* 9 Wheat. 362, 377; *Smith* v. *Condry,* 1 How. 28; 2 Sedg. Dam. (7th Ed.) 351, note *a.* Such, in my opinion, is the proper measure of damages here; and I am the more satisfied with this conclusion, because by that standard the insurance company (the libelant) and the owners of the coke settled the loss, the value at the time and place of the collision being $1,070.41. In the libel, as originally filed, the insurance company only claimed damages on that basis. That, I think, is the true claim, and a decree therefor will, under all the proofs, do substantial justice to everybody concerned.

Let a decree be drawn in favor of the libelant for $1,070.41, with interest thereon from October 17, 1885, and costs.