## MARION HOLDERMAN v. J. W. POND.

COURTS—*Jurisdiction*—*Torts Committed Outside of State.* An action for the conversion of certain corn and corn stalks, grown and standing upon land in the Indian Territory, leased in violation of law and the treaty between the United States and the Cherokee nation, brought by a citizen of this state against a person residing in such territory, but personally served with summons, cannot be maintained in this state.

*Error from Labette District Court.*

THE opinion states the case.

*Leroy Neale, A. D. Neale,* and *H. G. Webb,* for plaintiff in error.

*F. M. Smith,* for defendant in error.

Opinion by GREEN, C.: This was an action brought in a justice's court in Labette county, by J. W. Pond, against Marion and Mary Holderman, on the 12th day of March, 1885, upon the following bill of particulars:

" The plaintiff for his cause of action against the defendants says: That the defendants are indebted to the plaintiff in the sum of $190, upon an account for seven hundred bushels of corn at twenty-five cents per bushel, $175; and for sixty acres of corn stalks at twenty-five cents per acre, $15. Said defendants took and converted the same to their own use, and said amount is still due. Wherefore, plaintiff prays judgment against the defendants for $190, with seven per cent. interest from January 1, 1885, and costs of suit."

The case was taken to the district court and there tried, and resulted in a verdict and judgment for the plaintiff and against Marion Holderman, for $209.88. No service seemed to have been made upon the other defendant. The plaintiff in error filed a motion for a new trial, which was overruled, and he brings the case here for review.

From the special findings of the jury, it appears that the land upon which the corn in question grew was situated in the Cherokee nation, in the Indian Territory, and, at the time

of the alleged conversion, was fully matured but ungathered; and that the defendant purposely caused his stock to be driven to the field where the said corn was standing, to have them feed upon it. It further appears, from the evidence, that this land had been leased by the defendant to a firm, of which the plaintiff was a member, and that he had succeeded to the interest of the firm in such lease; that at the time of the making of the lease and the alleged conversion of the crop, the plaintiff was a resident of Kansas and the defendant, who was a "squaw-man," resided in the Indian Territory.

It is contended by the plaintiff in error that at the time of the alleged wrong no jurisdiction had been accorded to any court outside of the limits of that country, unless one of the parties be an inhabitant of that country and the other an inhabitant outside thereof, either as a plaintiff or defendant, and in that case exclusive original jurisdiction was then given to the nearest United States district court; that an action of such a character as this cannot be maintained in this state.

Laying aside the question of the right of the plaintiff below to waive the tort and recover as upon an implied contract, which seems to be well settled upon reason and authority, can the courts of this jurisdiction give the plaintiff below a remedy for a wrong committed in the Indian Territory, when there is a question as to whether there was a remedy there? The primary right of the plaintiff below to recover rested upon a tort committed where the remedy was confined to the nearest United States district court, which had exclusive original jurisdiction. Could the plaintiff below, "upon the theory of the implied promise and its infraction," recover in this jurisdiction for a wrong committed where the jurisdiction is restricted to the federal court, if, indeed, any remedy existed at all?

We think the tort charged, and the right and remedy growing out of such tort, must be determined by the law of the territory where the wrong was committed. The rule is well settled, that if there is no right to recover for an alleged injury in the state or territory where it is said to have been

committed, there can be none in any other state; and if the state in which the alleged injury is committed has declared the consequences and defined the liability therefor, that law must govern. (*Campbell v. Rogers,* 19 Law Rep. 329.)

By the seventh article of the treaty between the United States and the Cherokee nation, proclaimed August 11, 1866, (14 U. S. Stat. at Large, p. 800,) it is provided that the United States district court the nearest to the Cherokee nation shall have exclusive original jurisdiction of all civil and criminal cases. We think this provision of the treaty settles the jurisdiction of this case.

Section 2103 of the Revised Statutes of the United States makes void all contracts for the leasing of land in the Indian country, unless executed in the manner therein provided and approved by the secretary of the interior. The lease between Pond and Holderman was in violation of this law, and conferred no rights upon Pond to cultivate the land; he was there without authority. The question naturally suggests itself, whether or not, under such a state of facts, he could have maintained an action, in any form, against the defendant below in the Indian Territory. If he could not there, he should not be permitted to do so here. He can obtain no greater rights here than he had there. In order to maintain an action, founded upon an injury to person or property, the act which is the cause of the injury or damage and the foundation of the action must be actionable, or punishable at least, by the law of the place where the injury was done. (Cooley, Torts, 471; Wharton, Conflict of Laws, § 478; *Holland v. Pack,* Peck, [Tenn.,] 151; *Le Forrest v. Tohman,* 117 Mass. 109; *Smith v. Condry,* 1 How. 28; *McLeod v. Railroad Co.,* 58 Vt. 727; *Carter v. Goode,* 50 Ark. 155.) In the latter case, Goode sued Carter in Arkansas, to recover damages for an injury to a mule. It was proved upon the trial that the injury was committed in the Cherokee nation, where Carter and Goode were at the time residing; that they were citizens of Arkansas and had no permit to reside in the Indian country; that at the time the injury was inflicted, the mule was trespassing in

Carter's inclosure, which Goode knew it was in the habit of doing; and that Goode had no redress whatever for the injury; and that the act was not punishable in the Indian Territory. The court held that the action could not be maintained, because the act which caused the injury was not punishable or actionable by the law of the place where it was committed.

As the plaintiff below had no permit or license to lease the land where the corn was raised, and there being grave doubts whether he had any right to recover for the alleged conversion of this property in the Indian Territory, where the tort was committed, and if such right did exist, the jurisdiction was vested in another court, we think it follows from such a state of facts that the trial court had no jurisdiction.

We recommend a reversal of the judgment.

By the Court: It is so ordered.

All the Justices concurring.