**ISHIZAKI KISEN COMPANY, LTD., Appellant,**

v.

**UNITED STATES of America, Appellee.**

**ISHIZAKI KISEN COMPANY, LTD., Appellee,**

v.

**UNITED STATES of America, Appellant.**

**Nos. 73–1248, 73–1249.**

United States Court of Appeals, Ninth Circuit.

Feb. 3, 1975.

Graydon S. Staring, Lillick, McHose, Wheat, Adams & Charles, San Francisco, Cal., for appellant.

William E. Gwatkin, III, San Francisco, Cal., for appellee and cross-appellee.

Before KOELSCH and SNEED, Circuit Judges, and FIRTH,* District Judge.

* Honorable Robert Firth, United States District Judge, Central District of California, sitting by designation.

## OPINION

SNEED, Circuit Judge:

This admiralty case is the result of a collision between two vessels in the harbor at Kure, Japan. It raises a question concerning the application of the presumption of fault rule announced in The Pennsylvania, 86 U.S. (19 Wall.) 125, 22 L.Ed. 148 (1874), to collisions in foreign waters. Jurisdiction rests on 28 U.S.C. § 1292(b), 28 U.S.C. § 1333, and The Public Vessels Act, 46 U.S.C. § 781 et seq.

The vessels involved are the Kinsei-Go, a Japanese vessel owned and operated by Ishizaki Kisen Co., Ltd., and Army Vessel J–3793, owned by the United States and operated by the Department of the Army. The Kinsei-Go is a hydrofoil-type vessel of 63.75 gross tons which is regularly engaged in passenger service between the cities of Hiroshima, Kure, and Matsuyama. The J–3793 is a vessel of about 39 gross tons which is operated by the Army as personnel and cargo carrier in Kure harbor.

On the morning of December 21, 1967, in clear weather, both vessels were operating in their regular capacities on the waters of Kure harbor. The J–3793 was making a speed of 13 knots when her master first sighted the Kinsei-Go on his vessel's port bow, on a crossing course, at a distance of 1450 meters. The Kinsei-Go was making a speed of 31½ knots when her captain first sighted the J–3793 on his vessel's starboard bow, on a crossing course, at a distance of 800 meters. The J–3793 maintained her course and speed until she was at a distance of approximately 100 meters from the Kinsei-Go. At this point the master of the J–3793 reversed the engines from ahead to full astern. Immediately thereafter he sounded three short blasts on the ship's whistle to properly indicate that the engines were then full astern. The Kinsei-Go maintained her course and speed until she reached a point approximately 50 meters from the J–3793. At this point the captain of the Kinsei-Go

ordered her engines stopped and the rudder put hard left.

Because of the slow turning reaction of the Kinsei-Go and her speed at the time her engine was ordered stopped, the Kinsei-Go continued to ride on her hydrofoils as she passed the stem of the J–3793 which had by then come to a complete stop with her engine control in the neutral position. A collision resulted when the rear starboard hydrofoil of the Kinsei-Go made contact with the port bow of the J–3793.

The owners of the Kinsei-Go filed this action for damages and the United States counter-claimed. The case was tried in admiralty solely on the issue of liability. The district court, applying Japanese law, held both vessels at fault and, pursuant to the International Convention with Respect to Collisions, 1910, to which Japan is a signatory but the United States is not, apportioned the fault and liability ¾ to the Kinsei-Go and ¼ to the J–3793.[1] An Interlocutory Judgment was entered and this appeal and cross-appeal followed. We affirm.

The United States appeals the apportionment of ¼ of the fault to the J–3793. This question will be treated below. The principal controversy is the apportionment of ¾ of the fault to the Kinsei-Go. Under Rule 19 of the International Rules of the Road[2] (Regulations for Preventing Collisions at Sea, 1960) the Kinsei-Go, having the J–3793 on her starboard side was required to give way and failed to do so. However, this rule is modified by Japan Port Regulation 18–1 which states that "Miscellaneous Vessels must give way to vessels other than Miscellaneous Vessels in harbors." The Kinsei-Go is not a Miscellaneous Vessel and therefore, if the J–3793 were a Miscellaneous Vessel, the J–3793 rather than the Kinsei-Go would be the vessel required to give way. The trial court found that the J–3793 was not a Miscellaneous Vessel[3] and this finding is not really in dispute. The dispute centers on the fact that the J–3793 was not flying her international call sign as required by Article 30.1 of the Japanese Port Regulations Law.[4] This call sign is required to be flown by all vessels transiting Kure harbor which are *not* Miscellaneous Vessels. The argument is therefore raised that the failure of the J–3793 to fly this call sign contributed to a mistaken belief of the captain of the Kinsei-Go that the J–3793 was a Miscellaneous Vessel which was required to give way. The trial court made the following Findings of Fact which rebut such an argument:

22. At the time the J–3793 came into view of the Kinsei-Go, the J–3793 was not flying her international call sign as required by Article 30.1 of the Japan Port Regulations Law. However, there was no evidence presented in this case which would support a conclusion that this failure to fly an international call sign affected the judgment of the captain of the Kinsei-Go in any way as to whether or not the J–3793 was or was not a miscellaneous vessel.

23. The failure of the J–3793 to fly her international call sign did not con-

---

1. According to the district court, the fault of the J–3793 contributing to the collision consisted solely of the failure to sound a danger signal in accordance with Rule 28(b) of the International Rules of the Road (33 U.S.C.A. § 1090).

2. Rule 19 (33 U.S.C.A. § 1081).
   When two power-driven vessels are crossing, so as to involve risk of collision, the vessel which has the other on her own starboard side shall keep out of the way of the other.

3. Article 3 of the Japan Port Regulations Law defines Miscellaneous Vessels as referring to "launches, lighters, small boats, and all craft propelled wholly or primarily by oar." The district court found that "the master of the Kinsei-Go was mistaken in his belief that the J–3793 was a 'Miscellaneous Vessel' . . . and there was no reasonable basis for the master of the Kinsei-Go to believe that the J–3793 was a 'Miscellaneous Vessel.' "

4. Article 30.1. Vessels other than Miscellaneous Vessels shall not enter a port without hoisting their International Call Sign by signal hoist. This also applies to vessels who intend to transit a port area.

tribute in any way to the collision between the J–3793 and the Kinsei-Go.

These findings are not clearly erroneous and we will not disturb them on appeal. However, it is necessary to examine the method by which these findings were made. The trial court placed the burden on the plaintiff to prove that the violation of port rules by the J–3793 had contributed to the collision. The plaintiff failed to meet this burden but contends that no such burden should have been placed upon it and that under the Pennsylvania Rule the burden should have been placed on the United States to show that the failure to fly the international call sign could not have been the cause of the collision. The Pennsylvania, 86 U.S. (19 Wall.) 125, 22 L.Ed. 148 (1874). The failure to meet this burden assert the plaintiffs, would require the apportionment to the J–3793 of greater than ¼ fault and liability. The United States asserts that the Pennsylvania Rule is not applicable to the facts of this case.

## I.

### The Pennsylvania Rule

■ There is no doubt that a collision in foreign territorial waters is governed by the law of the place of collision. Western Union Co. v. Brown, 234 U.S. 542, 34 S.Ct. 955, 58 L.Ed. 803 (1914); Slater v. Mexican Nat'l R.R., 194 U.S. 120, 24 S.Ct. 581, 48 L.Ed. 900 (1904); Smith v. Condry, 1 How. 28, 11 L.Ed. 35 (1843). This jurisdiction usually "has the most significant relationship to the occurrence and the parties." [5] The parties recognize this and have devoted much time in an attempt to determine the meaning of Article 6 of the International Convention with Respect to Collisions, 1910, which Japan has signed and which abolishes "legal presumptions of fault." Both parties then frame the issue as whether or not this Convention abolishes the Pennsylvania Rule. This Rule stated more fully is as follows:

The liability for damages is upon the ship or ships whose fault caused the injury. But when, as in this case, a ship at the time of a collision is in actual violation of a statutory rule intended to prevent collisions, it is no more than a reasonable presumption that the fault, if not the sole cause, was at least a contributory cause of the disaster. In such a case the burden rests upon the ship of showing not merely that her fault might not have been one of the causes, or that it probably was not, but that it could not have been. Such a rule is necessary to enforce obedience to the mandate of the statute. The Pennsylvania, supra, at 135.

The parties in their briefs, although not in oral argument, overlooked the possibility that the Pennsylvania Rule is applicable either because it is a part of the procedural law of the forum or because the interests of the forum outweigh those of the place of the collision notwithstanding its possible non-existence under Japanese law.

■ To determine whether for either or both of these reasons the Pennsylvania Rule should be applied in this case it is necessary to examine the principal purposes of the Rule. There are two such purposes. The first is that it is designed to "enforce obedience to the mandate of the [safety] statute" violated. The Pennsylvania at 135. This is accomplished by imposing a burden on the violator that "is frequently extremely difficult, if not impossible, . . . to discharge." The Princess Sophia, 61 F.2d 339, 347 (9th Cir. 1932). Obedience, it is reasoned, will be considered by most as preferable to an impossible obstacle to exculpation. In all events, greater attention to such statutes by ship operators will result. The second is that the operation of the Rule simplifies the adjudication of collision cases when applied in conjunction with a system of admiralty law, such as is presently followed by

5. Cf. § 145 Restatement, Conflict of Laws 2d (1971).

the courts of the United States,[6] in which there is an equal division of property damages when both vessels are at fault.

Neither of these purposes in our view is sufficiently compelling to require the application of the Pennsylvania Rule to these facts. Neither party suggests that the equal division of property damages presently required under American admiralty law is applicable to this case. All assume quite properly that the comparative fault system of Japanese law applies. To utilize the Pennsylvania Rule in conjunction with the Japanese system does nothing to simplify adjudication and, because of the difficulty in comparing the failure to discharge a frequently impossible burden with the fault of a different character of the other party to a collision, may frustrate the ends of the Japanese system by necessitating the resort to the arbitrary result that an equal division of damages provides.

It remains true, of course, that the application of the Pennsylvania Rule to the facts of this case would promote obedience to Article 30.1 of the Japanese Port Regulations Law. However, as will be pointed out below, there is no showing that Japanese maritime law ever contained a rule similar to the Pennsylvania Rule and, in any event, it is our view that any such rule would not have survived the Japanese adherence to the International Convention with Respect to Collisions, 1910. Under these circumstances utilization of the Pennsylvania Rule is unnecessary. The interests of the forum under the circumstances of this case do not outweigh those of the place of collision.

Nor should the Pennsylvania Rule here be considered a part of the procedural law of the forum. Were the Rule designed merely to shift to the violator of the statutory rule the burden of going forward with the evidence its characterization as "procedural" would be proper.

§ 134 Restatement Conflict of Laws 2d (1971). The Rule, however, does much more. Its effect has been described as follows:

The shift in burden resulting from application of the Pennsylvania Rule is two-fold. Not only must the violator meet the burden of producing evidence to counter the presumption of causation, but he must also persuade the trier of fact that his explanation should be adopted. In order to carry this burden of persuasion under the Rule as it was created, it appears that a statutory violator would have to demonstrate beyond all doubt that his violation did not cause the loss.[7]

This is in accord with our own decisions which hold that the vessel guilty of a statutory violation has the burden "[to establish] that the violation could not reasonably be held to have been a proximate cause of the collision." Pacific Tow Boat Co. v. State Marine Corp., 276 F.2d 745, 749 (9th Cir. 1960). Such an effect generally will impose upon the ship to a collision which violated the statutory rule a significant portion of the property damages for which otherwise it very likely would not have been responsible.

Under the currently prevailing view with respect to the distinction between substance and procedure in the conflict of laws setting, rules designed to affect the decision of a particular issue are classified as substantive. The Restatement, Conflict of Laws 2d (1971) puts it this way:

§ 134. Burden on Going Forward with The Evidence: Presumptions

The forum will apply its own local law in determining which party has the burden of going forward with the evidence on a particular issue unless the primary purpose of the relevant rule of the state of the otherwise applicable

---

**6.** *See* Reliable Transfer Co., Inc. v. United States, 497 F.2d 1036 (2d Cir.), cert. granted, 419 U.S. 1018, 95 S.Ct. 491, 42 L.Ed.2d 291 (1974).

**7.** The Pennsylvania Rule: Charting a New Course for An Ancient Mariner, 54 Boston U.L.Rev. 78, 80 (1974). (footnotes omitted).

law is to affect decision of the issue rather than to regulate the conduct of the trial. In that event, the rule of the state of the otherwise applicable law will be applied.

As an example of a rule designed "to affect decision of the issue rather than to regulate the conduct of the trial" the Comment to § 134 cites a statute which provides that a person shall be deemed dead if nothing is heard of him for a fixed period of time in the absence of rebutting evidence. Another example cited is the familiar type of statute in which under certain circumstances there is a rebuttable presumption that two persons died simultaneously. Such rules are designed to provide an arbitrary solution to a problem where little or no evidence is available.

We conclude, therefore, that the Pennsylvania Rule is more akin to substantive law than to rules of procedure concerned primarily with judicial administration. The consequence is that it should not be applied to this case merely because it constitutes a part of the law of the forum. Under circumstances other than those presently before us it may be appropriate to apply the Rule because the interests of the forum may outweigh those of the place of the accident. This is not such a case, however.

Our conclusion is not in conflict with the rather sketchy existing case law. We have been cited to no case involving a collision in foreign territorial waters in which a finding of liability was necessarily predicated on application of the Pennsylvania Rule.[8] Richelieu Navigation Co. v. Boston Marine Insurance Co., 136 U.S. 408, 10 S.Ct. 934, 34 L.Ed. 398 (1890) has at times been read as applying the Rule to the stranding of a vessel in foreign waters. See Director General of India Supply Mission v. S. S. Maru, 459 F.2d 1370, 1376 (2d Cir., 1972), cert. denied 409 U.S. 1115, 93 S.Ct. 898, 34 L.Ed.2d 699 (1973); The Lansdowne, 105 F. 436, 443 (E.D.Mich.1900); Flint & P.M.R. Co. v. Marine Ins. Co., 71 F. 210, 215 (E.D.Mich.1895), appeal dismissed, 76 F. 1005 (6th Cir. 1896). In Richelieu, a Canadian vessel stranded on an island in Canadian waters after failing to reduce its speed in fog and maintain a lookout as required by Canadian law. Although the Supreme Court discussed the Pennsylvania Rule in Richelieu a careful reading demonstrates that its finding of liability was based on a burden similar to the Pennsylvania Rule which was imposed by Canadian statute. See The Pennsylvania Rule: Charting a New Course for An Ancient Mariner, 54 Boston U.L.Rev. 78, 93 n. 91 (1974).

The question also arose in The Aakre, 122 F.2d 469 (2d Cir.), cert. denied 314 U.S. 690, 62 S.Ct. 360, 86 L.Ed. 552 (1941), which involved the stranding of a Norwegian vessel in the Bay of Fundy. The Aakre majority never reached the question, however, determining that even if the Rule applied in foreign waters, the owners of the vessel had met the burden of proof under the Rule and were free from liability. 122 F. 469, 474. In a dissenting opinion Judge Frank argued that the Pennsylvania Rule should be applied because "it is salutary that our courts should do what they can to see to it that legislation like the Norwegian statute is obeyed." 122 F.2d at 476. This reasoning is not persuasive on the facts of this case for, as is evident from our previous discussion, the interests of Japan are not in accord with the Rule of The Pennsylvania.

8. In The Lansdowne, infra, the court stated that the Rule applied to a collision between a Canadian and an American vessel in Canadian waters. 105 F. at 443. However, the court also apparently found negligence without the aid of the Rule. "The navigation of the Lansdowne was fraught with so many sins against the Canadian statutes, the neglect of so many precautions required by the ordinary practice of seamen, that all doubts must be resolved against her." 105 F. at 448.

Flint & P.M.R. Co., infra, did not involve a collision but a stranding of an American vessel in Canadian waters. While the court stated that the Pennsylvania Rule applied, it was also indecisive in determining whether American or Canadian law governed the case. 71 F. at 214–16. Moreover, negligence was found without aid of the Rule as the court stated that the evidence "establishes incontestably the relation of cause and effect between the speed and the stranding of the steamer." 71 F. at 216.

## II.

### Japanese Law As Affected By the International Convention

Turning to Japanese law, the law of the place of collision, it is necessary to determine whether the Pennsylvania Rule is a part of that law. We begin by observing that the parties have not established Japanese law beyond pointing out that Japan is a signatory nation to the International Convention with Respect to Collisions, 1910. It has not been proved, for example, that Japanese law at any time embodied the Pennsylvania Rule or its equivalent. Apparently the parties have assumed the Rule, or its equivalent, existed and have focused their attention on the effect on such a rule of Article 6 of the Convention. For the purpose of this opinion we also will assume that it existed.

Article 6 of the Convention can be translated from the French as follows:

There shall be no legal presumptions of fault in regard to liability for collision.

There exists a difference of opinion with respect to whether this is a proper translation of the applicable official French language of the Convention. The expression "legal presumptions of fault" is an English translation of the French expression "présomptions légales de faute." Benedict insists that the proper translation of the French is "statutory presumptions of fault" so that Article 6 properly translated would read:

There shall be no statutory presumptions of fault in regard to liability for collision.

9. This Act read as follows:

Sect. 419(4). Where in a case of collision it is proved to the court before whom the case is tried, that any of the collision regulations have been infringed, the ship by which the regulation has been infringed shall be deemed to be in fault, unless it is shown to the satisfaction of the court that the circumstances of the case made departure from the regulations necessary.

10. The repeal was accomplished by The Maritime Conventions Act, 1911. See Marsden, 4 British Shipping Laws: Collisions at Sea,

See 4 Benedict on Admiralty, § 620 at 246–5 (1940). So translated a judge-made Japanese version of the Pennsylvania Rule would survive the Convention because it is not a statutory presumption but rather one created by judges to assist them in deciding cases. Benedict's analysis is based upon the distinction in the Code Napoleon, §§ 1350, 1353 between a statutory presumption and non-statutory presumptions. Code Napoleon, § 1350 defines "La présomption légale" as one which is "affixed by a special statute." This definition, argues Benedict, must be given to the same words when they appear in Article 6.

■ We believe that Article 6 is addressed to presumptions such as the Pennsylvania Rule without regard to whether they rest on judicial or legislative authority. Consistency in the interpretation of Article 6 requires this result because such presumptions in some nations may be contained in statutes while in others in the opinions and judgments of courts. The Pennsylvania Rule, for example, is a judge-made rule in the United States while in the United Kingdom its equivalent was contained in The Merchant Shipping Act of 1894 [9] which was repealed shortly after the United Kingdom signed the International Convention.[10] To interpret the Convention to require the repeal of a statutory presumption, but not one different in substance, derived from case law, irrationally enhances the source of the presumption at the expense of uniformity in the understanding and application of the Convention.

§ 634 (11th ed. 1961). The effect of the repeal has been described as follows:

It means that the old statutory provision that the mere fact of a breach of the regulations, whether it did or did not in fact contribute to the collision, is not to be sufficient to render a vessel responsible for the collision as one of two wrongdoers is repealed, and the court is left to its own judgment and discretion in the case before it. The Enterprise [1912] P. 207, 211; 12 Aspinall 240, 244. Similar developments occurred in Canada, Newfoundland, Australia, and New Zealand. See Griffin, The American Law of Collision, § 25 (1949).

It does not follow from this that Article 6 is intended to make inoperative all presumptions. Some, such as those which place upon a vessel the duty of going forward with the evidence, are not presumptions "in regard to liability for collision." They do not affect liability in the strong and direct way that the Pennsylvania Rule does. Once more it is important to recognize that the Pennsylvania Rule more resembles a rule of substantive law than it does a mere procedural rule designed to expedite judicial proceedings. The latter rules survive Article 6. The Pennsylvania Rule, on the other hand, establishes an almost insurmountable burden of proof that virtually insures that some liability will be imposed upon the ship that is charged with such a burden. It strains reason to insist that it is not a legal presumption of fault "in regard to liability for collision."

Because we believe Article 6 is not consistent with the continued existence of a Japanese version of the Pennsylvania Rule, we are prepared to hold that the law of the place of the collision, Japan, presently contains no such Rule, or its equivalent. We are further encouraged to believe this by the failure of the counsel for Kinsei-Go to offer any proof that Japanese law is to the contrary.

It follows that the trial court did not err in refusing to employ the Pennsylvania Rule.

### III.

### The Cross-Appeal of the United States

The United States has cross-appealed in this action and claims error in the apportionment of ¼ of the fault and liability to the J–3793. This apportionment was made on the basis of the following finding of fact:

9. The J–3793 violated Rule 28(b) of the International Rules of the

Road by failing to sound a danger signal, and this failure was a cause of the collision.[11]

This finding is not clearly erroneous and the judgment of the district court is

Affirmed.

---

11. Rule 28 (33 U.S.C.A. § 1090):

(b) Whenever a power-driven vessel which, under these Rules, is to keep her course and speed, is in sight of another vessel and is in doubt whether sufficient action is being taken by the other vessel to avert collision, she may indicate such doubt by giving at least five short and rapid blasts on the whistle. The giving of such a signal shall not relieve a vessel of her obligations under Rules 27 and 29 or any other Rule, or of her duty to indicate any action taken under these Rules by giving the appropriate sound signals laid down in this Rule.