262 F.2d 559
 Zelda GOSNELL, Harry G. Heideck, Samuel R. Owings, August
Cornelius Jennings, Charles W. Jones and John L.
Burchette, Libelant and
Claimant-Respondents, Appellants,
v.
UNITED STATES of America, Respondent, Appellee.
Petition of UNITED STATES of America, as owner of THE Navy
Barge YFNX-6, for exoneration from or limitation
of liability.
UNITED STATES of America, as owner of The Navy Barge YFNX-6,
Libelant, Appellant,
v.
THE fishing vessel TOPPER, formerly named THE NORA V, her
engines, boilers, etc., in rem, and Harry G.
Heideck, in personam, Respondents, Appellees.
 Nos. 7753, 7754.
 United States Court of Appeals Fourth Circuit.
 Argued Nov. 6, 1958.
Decided Jan. 5, 1959.
 
 John H. Skeen, Jr., Baltimore, Md. (William A. Skeen, Baltimore, Md., on the brief), for appellants in No. 7753 and appellees in No. 7754.
 Charles S. Haight, Jr., Sp. Asst. to Atty. Gen. (George Cochran Doub, Asst. Atty. Gen., Leon H. A. Pierson, U.S. Atty., Baltimore, Md., and Samuel D. Slade, Atty., Dept. of Justice, Washington, D.C., on the brief) for United States.
 Before SOBELOFF, Chief Judge, SOPER, Circuit Judge, and BOREMAN, District Judge.
 BOREMAN, District Judge.
 No. 7753 is an appeal from a final decree of the United States District Court for the District of Maryland, granting the petition of the United States, as owner of Navy Barge YFNX-6, for exoneration from liability, and dismissing the claims of appellants, claimants in the limitation proceeding.
 No. 7754 is a contingent cross-appeal by the United States from a part of the District Court's final decree dismissing the Government's libel against the fishing vessel TOPPER (formerly the NORA V), in rem, and Harry G. Heideck in personam.
 Both cases arose out of the sinking of the fishing vessel NORA V in Delaware Bay shortly after noon on July 15, 1954. Appellants in No. 7753 are Harry G. Heideck, the NORA V's owner and master, who was operating her at the time; her passengers who survived the sinking; the personal representatives and dependant survivors of passengers who perished in the disaster. The libel and claims of appellants alleged that the NORA V was caused to sink by reason of the negligence of the United States (hereinafter referred to as 'the Government'), as owner of the YFNX-6, which had foundered in the Bay on July 7, 1954, and subsequently broke up, causing the Bay to become littered with wreckage and debris.
 In No. 7754 the Government denied the alleged cause of the NORA V's loss and any negligence on the part of the Government in the premises, and alleged that even if appellants' theory of causation was correct, negligence of the NORA V was the sole proximate cause of her loss, entitling the Government to indemnity. Appellant's libel was filed in the United States District Court for the District of Delaware, transferred to the District of Maryland, and consolidated for trial with the exoneration and limitation proceeding.
 The District Court found, on the evidence, that the YFNX-6 was sunk while being negligently towed by the Government tug BANNOCK, but granted exoneration because appellants had failed to prove that the sinking of the NORA V was caused by anything that came from the wreck of the YFNX-6.
 The District Court's opinion, containing findings of fact, discussion of applicable law and conclusions, is reported at 156 F.Supp. 325 and styled, 'THE YFNX-6. THE NORA V. Petition of the UNITED STATES of America, as owner of the Navy Barge YFNX-6, for exoneration from or limitation of liability.' (See also 1957 A.M.C. 2340.)
 The Government announced that the cross-appeal in No. 7754 from the decree dismissing the libel for indemnity against the fishing vessel would be withdrawn in event of affirmance of the decree of exoneration in No. 7753.
 We are asked to reverse the District Court's decree exonerating the Government from liability on the ground that the findings of fact are erroneous. The evidence consists of depositions, the live testimony of witnesses before the court, and many exhibits (documents of various kinds, logs, tables, photographs, maps, etc.). The live testimony appears in five separate volumes containing, in the aggregate, over eight hundred typewritten pages, and its presentation required approximately five days. The District Court states (156 F.Supp. at page 327):
 'Certain facts are undisputed, but on many points there is conflicting testimony. These findings are made after reviewing all of the evidence referred to in the elaborate briefs and reply briefs filed after the trial and considering the very able oral arguments made by the two advocates. The findings are supported by testimony and other evidence which is not referred to in detail. Testimony to the contrary was sometimes rejected because I did not find it credible, sometimes because it was limited or explained by other evidence.'
 In McAllister v. United States, 1954, 348 U.S. 19, 75 S.Ct. 6, 7, 99 L.Ed. 20 Mr. Justice Minton, speaking for the Court, said:
 
 
 1
 'The first question presented is whether the Court of Appeals in reviewing the District Court's findings applied proper standards. In reviewing a judgment of a trial court, sitting without a jury in admiralty, the Court of Appeals may not set aside the judgment below unless it is clearly erroneous. No greater scope of review is exercised by the appellate tribunals in admiralty cases than they exercise under Rule 52(a) of the Federal Rules of Civil Procedure. (Cases cited). A finding is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed',' * * *.'
 
 
 2
 Before the McAllister decision, this Court had repeatedly held that the trial court's resolutions of such questions on conflicting evidence are entitled to great weight and will not be reversed except for plain error. Hodges v. Standard Oil Co. of New Jersey, 4 Cir., 1941, 123 F.2d 362; Jordan v. Texas Co., 4 Cir., 1941, 123 F.2d 614; The Ensley City, 4 Cir., 1948, 170 F.2d 25. In FORT FETTERMAN v. South Carolina State Highway Department, 261 F.2d 563, District Judge Hoffman, though disagreeing with the findings of the trial judge, speaking for this Court, aptly stated the rule as follows:
 
 
 3
 'If these findings of fact are supported by credible testimony, it is well settled that they are not to be disturbed unless found to be clearly erroneous. This principle is particularly applicable where, as in this case, the trial judge heard the witnesses and observed their demeanor on the witness stand. * * * Mere expressions of disagreement do not justify a reversal of such findings of fact if credible evidence exists to support the view of the trial judge.'
 
 
 4
 It is undisputed that the NORA V, at a point approximately four miles to the west of the wrecked YFNX-6 and on a 'very sunshiny day' with 'wonderful visibility', struck an object which nobody saw, either before or after she capsized.
 
 
 5
 At that time the NORA V was headed away from the wrecked barge, toward her home port, against a wind blowing from the northwest and riding waves approximately two feet high. Shortly before the sinking of the NORA V, one of the passengers discovered water pouring into the vessel and several of the passengers claimed to have heard a noise and to have felt a bump, but Captain Heideck, who had had long experience on the water and was then at the wheel, heard or felt nothing of an unusual nature. The same Captain Heideck claimed to have observed a large amount of debris from the wrecked barge in the area of the NORA V on the day of the disaster but, strangely, the passengers failed to see any such debris.
 
 
 6
 The trial court found that the barge was not unseaworthy with respect to her intended voyage and uses; 'that the loss of the YFNX-6 was caused by negligence on the part of the BANNOCK in towing the barge at too great a speed'; that the wreck was promptly buoyed; that warnings of its presence were issued by the Coast Guard; that there was no negligence in retrieving the debris from the wrecked barge; that due to the size and location of the hole in the hull of the wrecked NORA V and the nature of the exterior and internal damage, such damage was caused by a floating object which 'must have weighed around 2,000 pounds and must have been floating vertically rather than horizontally'; that debris, such as trees, pilings, logs, heavy timbers, 'deadheads' or 'hull-busters', and wreckage of all sorts, was frequently in Delaware Bay, drifting down from points on the river toward and into the bay and the ocean; that a 'deadhead' or a 'hull-buster' is a piling, waterlogged on one end and floating in an upright or vertical position, sometimes just on the surface and sometimes submerged one or two feet; that, considering the evidence as to winds and tides and their effect on floating objects, 'it is most unlikely (and highly improbable) that any debris from the YFNX-6 ever got as far west as the place of the accident to the NORA V'; that the object which was struck by the NORA V must have been very heavy, waterlogged over most of its length or held down by metal at one end; that 'the loss of the NORA V was probably caused by contract with a heavy floating object, such as a 'hull-buster"; that, granting the possibility that any debris from the YFNX-6 'could have gotten as far west as the place of the accident within eight days or less, under the weather conditions prevailing', no piece or combination of pieces which escaped from the YFNX-6 could have caused the peculiar damage which the NORA V sustained.
 
 
 7
 That the evidence was conflicting there can be no doubt. There was opinion evidence of experts as to the size, weight, shape and nature of the unidentified object which holed the NORA V, and as to the effect of winds and tides on floating objects during the period between the sinking of the barge on July 7 and the disaster on July 15. There was evidence as to the direction in which the capsized NORA V and her passengers floated on July 15 and the day following. Extravagant claims are asserted by both sides as to the weight to be accorded to particular phases of evidence and portions of the conflicting testimony of witnesses elicited on both direct and cross-examination. The burden thus imposed upon the trial court was far from trivial and presented many troublesome problems.
 
 
 8
 Having reviewed the record, we are mindful of the rule that we are not to set aside the judgment below unless it is clearly erroneous. On the entire evidence, we are not 'left with the definite and firm conviction that a mistake has been committed'. Quotation from McAllister v. United States, supra (348 U.S. 19, 75 S.Ct. 8). The District Court heard and observed the witnesses, determined their credibility and the weight to be given to their testimony. There was evidence to support the findings of fact and we cannot hold that they are clearly erroneous. Therefore, these findings will not be disturbed.
 
 
 9
 Appellants claim error because of the failure of the trial court to apply the rule of The Pennsylvania, 1873, 19 Wall. 125, 86 U.S. 125, 22 L.Ed. 148. They ask this court to hold that, because of the Government's violation of the Wreck Statute, 33 U.S.C.A. 409,[1] they need not prove that the unseen object which holed the NORA V came from the YFNX-6.
 
 
 10
 In The Pennsylvania, supra, the damage resulted from the known collision between a known steamer and a known schooner, the latter, by ringing a bell, being in violation of a statute requiring the use of a fog horn. The Supreme Court held that, due to the violation of the statutory requirement, the schooner had the burden of showing 'not merely that her fault might not have been one of the causes, or that it probably was not, but that it could not have been'. The rule, thus stated, was not there invoked to establish either the 'physical cause' or the identity of one of two colliding objects, as here sought, but simply placed the burden upon the schooner to show that its statutory violation could not have been the cause, or one of the causes, of the collision between the known ships.
 
 
 11
 Appellants argue that since the sinking of the YFNX-6 was due to negligence on the part of the Government, the burden of proof shifted and the Government must show that the loss of the NORA V could not have been caused by debris from the YFNX-6. Thus they seek to avoid the effect of their failure of proof by relying upon The Pennsylvania rule.
 
 
 12
 The District Court said (156 F.Supp. at page 331):
 
 
 13
 'It is not enough for the claimants to show negligence on the part of the government in the sinking of the YFNX-6; they must also show by a fair preponderance of evidence that debris from the YFNX-6 was a more probable cause than any other of the damage to the NORA V.'
 
 
 14
 Referring particularly to appellants' argument as to a shifting of burden of proof, the District Court (156 F.Supp. 332-333) replied:
 
 
 15
 'There are several reasons why this is not a sound argument. The Pennsylvania rule does not apply where the physical cause of the damage is not known. Any plaintiff, marine or shoreside, who seeks to hold a defendant liable for injuries, must show: (1) the physical cause of his injuries; (2) fault on the part of the person sought to be held responsible; and (3) a causal connection between such fault and the physical cause. The Pennsylvania rule begins to operate after libelant has passed the second stage, but not before. The Pennsylvania rule does not shift the burden of proof on the first issue: the physical cause of the damage. Such proof is always a part of libelant's case. The argument advanced by claimants disregards the distinction between (1) the physical cause, or cause in fact, of a casualty, and (3) the causal connection between respondent's fault and the physical cause.'
 
 
 16
 We have examined a large number of cases involving collisions between ships, between ships and bridges, between floating ships and known submerged wrecked ships or barges, cases involving stranding of ships, in which The Pennsylvania rule was applied. We have not found, nor have appellants cited, any case holding that a violation of the Wreck Act is that sort of violation which will invoke The Pennsylvania rule. Such a holding, under the facts and circumstances here, would require the owner of a vessel wrecked in navigable waters to prove that his wreck could not have caused any subsequent disaster in the area, a wholly unsound result and surely never contemplated by the Supreme Court in The Pennsylvania. As stated in Seaboard Tug & Barge, Inc. v. Rederi AB/Disa, 1 Cir., 1954, 213 F.2d 772, 775,
 
 
 17
 'We cannot believe that the Supreme Court in The Pennsylvania intended to establish as a hard and fast rule that every vessel guilty of a statutory fault has the burden of establishing that its fault could not by any stretch of the imagination have had any causal relation to the collision no matter how speculative, improbable or remote.'
 
 
 18
 Salaky v. The Atlas Barge No. 3, 2 Cir., 1953, 208 F.2d 174, 175, involved alleged damage to various moored vessels from oil sludge and foreign matter claimed to have been discharged into the water by two barges. Judge Clark wrote:
 
 
 19
 '* * * the trial court has failed to observe properly the burden of proof which was resting upon the libelant to show by credible evidence or reasonable inference therefrom that the pollution complained of came from the barges sued, or from either one separately. We are left with the fairly firm conviction that neither barge contributed to the injuries for which suit is brought; * * *.'
 
 
 20
 That court did not hold that the statutory violation required the respondent to prove that its oil could not have caused the damage. On the contrary, libelant was required to prove the physical cause of the damage.
 
 
 21
 While holding that the requirements of The Pennsylvania rule must be strictly enforced for the safety of navigation, this court refused to apply the rule where it was evident that the breach of a statutory duty to blow a whistle did not cause the accident. Webb v. Davis, 4 Cir., 1956, 236 F.2d 90.
 
 The lower court further found and stated:
 
 22
 'Even if the rule did apply, the government has met that burden (a) by showing that it was practically impossible for any debris from the YFNX-6 to have proceeded four miles west, to the place of accident, within eight days or less, and (b) by showing that nothing which came off the YFNX-6 was heavy enough to have caused the peculiar damage which the NORA V suffered.'
 
 
 23
 We agree not only with the District Court's refusal to apply The Pennsylvania rule under the facts and circumstances here presented, but also with the finding that the Government has sustained the burden of proof. The Government is entitled to exoneration from liability and the decree below is
 
 
 24
 Affirmed.
 
 
 
 [1]
 'It shall not be lawful * * * to voluntarily or carelessly sink, or permit or cause to be sunk, vessels or other craft in navigable channels; * * *. And whenever a vessel, raft, or other craft is wrecked and sunk in a navigable channel, accidentally or otherwise, it shall be the duty of the owner of such sunken craft to immediately mark it with a buoy or beacon during the day and a lighted lantern at night, and to maintain such marks until the sunken craft is removed or abandoned, and the neglect or failure of the said owner so to do shall be unlawful; and it shall be the duty of the owner of such sunken craft to commence the immediate removal of the same, and prosecute such removal diligently, and failure to do so shall be considered as an abandonment of such craft, and subject the same to removal by the United States as provided for in sections 411-416, 418, and 502 of this title.'