**Jack MATHES, Plaintiff-Appellant,**

v.

**THE CLIPPER FLEET, etc., et al., Defendants-Appellees.**

No. 84-6122.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 6, 1985.

Decided Oct. 22, 1985.

Jeffrey B. Harrison, John Elson, Harrison & Elson, Los Angeles, Cal., for plaintiff-appellant.

David McLeod, Lillick, McHose & Charles, Los Angeles, Cal., Wilner, Narwitz, Lewin & Klein, Samuel Wilner, Wendy Berkowitz, Beverly Hills, Cal., for defendants-appellees.

Before SNEED, NELSON, and NORRIS, Circuit Judges.

NORRIS, Circuit Judge:

Appellant Jack Mathes is a seaman who brought this action under the Jones Act, 46 U.S.C. § 688 (1985), and general maritime law to recover damages for personal injury suffered while he was working aboard ship. The jury found in favor of both defendants. On appeal Mathes argues that the district court committed error in refusing to instruct the jury on the the the so-called *Pennsylvania* Rule (*The Pennsylvania*, 86 U.S. [19 Wall.] 125, 22 L.Ed. 148 (1873) ), and on the theory of negligence per se, as well as in refusing to admit certain testimony. We affirm.

## I

Mathes was employed by defendant Western Boat Operators ("Western") as a mate on the supply boat Low Tide. On October 20, 1982, the Low Tide was moored to an off-shore oil platform in the Santa Barbara Channel. The Low Tide sent a radio call to the Clipper Larry asking it to come around to the platform and receive some packages from the Low Tide. The Clipper Larry is a vessel owned by defendant The Clipper Fleet, Inc. ("Clipper Fleet").

Stephen James, Captain of the Clipper Larry, responded to the radio call from the Low Tide and brought his vessel around the platform. He backed the Clipper Larry stern to the starboard side of the Low Tide. As the mate, Mathes was in charge of the operation of passing boxes over to the Clip-

per Larry. Mathes positioned himself precariously on the edge of the Low Tide and, when the Clipper Larry rode up on an ocean swell, his foot was pinned between the vessels. As a result of the accident, he suffered injury to his left ankle.

Mathes sued Clipper Fleet under general maritime law, alleging that it negligently failed to use proper loading operations, that it negligently controlled the Clipper Larry, and that the vessel was improperly manned and without a licensed skipper. Clipper Fleet denied the allegations, contesting Mathes's interpretation of the pertinent United States Coast Guard regulations, maintaining that the method employed by the crew of the Clipper Larry was safe, and that Mathes's own negligence was the sole cause of his injury.

Mathes sued Western under both the Jones Act and maritime law, alleging that the captain of the Low Tide, Bob Levy, was negligent and rendered the Low Tide unseaworthy in failing to prevent Mathes from loading in an unsafe manner. Western denied the allegations, and argued that Mathes's own negligence was the sole cause of his injury.

## II

Under the *Pennsylvania* Rule of maritime law, when a vessel operated in violation of a statute is involved in an accident,

> the burden rests upon the ship of showing not merely that her fault may not have been one of the causes, or that it probably was not, but that it could not have been. Such a rule is necessary to enforce obedience to the mandate of the statute.

*The Pennsylvania*, 86 U.S. [19 Wall.] 125, 136, 22 L.Ed. 148 (1873). The *Pennsylvania* Rule has often been applied in this circuit. *See, e.g., Waterman Steamship Corp. v. Gay Cottons*, 414 F.2d 724, 736 (9th Cir.1969); *States Steamship Co. v.*

*Permanente Steamship Corp.*, 231 F.2d 82, 86 (9th Cir.1956); *The Denali*, 105 F.2d 413, 418 (9th Cir.1939), *cert. denied*, 311 U.S. 687, 61 S.Ct. 65, 85 L.Ed. 444 (1940); *The Princess Sophia*, 61 F.2d 339, 347 (9th Cir.1932).

 Mathes requested jury instructions on the *Pennsylvania* Rule based on the contention that the Clipper Larry's skipper did not have the local endorsement on his license as required by Coast Guard licensing regulations (46 C.F.R. § 186.05–1, et seq. (1984)).[1] The district court ruled that the requirement was satisfied because another member of the crew had a local endorsement even if the skipper did not. We agree with the district court's interpretation of the regulations.[2]

The regulations, on their face, do not require the skipper of a vessel to have a local endorsement. Rather they require a vessel to have "in her service and on board such complement of licensed personnel, and crew, as may, in the judgment of the Officer in Charge, Marine Inspector, be necessary for her safe operation." 46 C.F.R. § 186.05–1(a) (1984). We agree with the Fourth Circuit, as did the district court below, that "[t]he regulation is designed to insure that there shall be on such a vessel *a* person whose competence to operate or direct its operations has been assured." *Duty v. East Coast Tender Services, Inc.*, 660 F.2d 933, 947 n. ** (emphasis in original), *rev'd on reh'g*, 660 F.2d 946 (4th Cir. 1981) (en banc), *cert. denied*, 455 U.S. 945, 102 S.Ct. 1442, 71 L.Ed.2d 657 (1982). Mathes proved only that the skipper of the Clipper Larry did not have a local endorsement; he did not prove that the Clipper Larry's certificate of inspection required the skipper to have a local endorsement, nor that the local endorsement requirement was not satisfied by the credentials of a deckhand, Kurt Holzhauer, as contended

---

**1.** The *Pennsylvania* Rule applies to violations of regulations promulgated pursuant to statutory authority. *Belden v. Chase*, 150 U.S. 674, 680, 14 S.Ct. 264, 266, 37 L.Ed. 1218 (1893).

**2.** We review *de novo* the district court's interpretation of the Coast Guard Regulations. *Rawlings v. Heckler*, 725 F.2d 1192, 1194 (9th Cir.1984).

by Clipper Fleet.[3] Accordingly, we affirm the district court's ruling that the requirements of the regulations were satisfied by the credentials of Holzhauer.

■ Mathes also argues that the *Pennsylvania* Rule applies because Holzhauer did not have his credentials physically aboard ship as required by 46 C.F.R. § 185.10 (1984). We agree with the district court that this violation does not bring into play the *Pennsylvania* Rule because there is no conceivable causal connection between the violation and the injury. As the Supreme Court said in *The Pennsylvania* itself, "[i]t must be conceded that if it clearly appears the fault could have had nothing to do with the disaster, it may be dismissed from consideration." 86 U.S. [19 Wall.] at 136. *See also Gosnell v. United States*, 262 F.2d 559, 563 (4th Cir.1959) ("where it [is] evident that the breach of a statutory duty ... did not cause the accident" the *Pennsylvania* Rule does not apply); *Seaboard Tug & Barge, v. Rederi AB/Disa*, 213 F.2d 772, 775 (1st Cir.1954) (in applying the *Pennsylvania* Rule, the courts "are limited to the reasonable possibilities") (quoting *The Mabel*, 35 F.2d 731, 732 (2d Cir.1929) ).[4]

### III

■ Mathes also claims that the asserted violations of the Coast Guard regulations entitled him to jury instructions on negligence per se. We agree with the district court's reasoning that the negligence per se rule is inapplicable for the same reasons that the *Pennsylvania* Rule is inapplicable,

namely that Captain James's failure to have a local endorsement did not constitute a violation of the regulations and that Holzhauer's failure to have his locally endorsed license on board had no causal connection with Mathes's injury. The only relevant difference between the two theories is that the per se rule requires the plaintiff to prove causation whereas the *Pennsylvania* Rule shifts the burden of proof on causation to the defendant. *California v. Italian Motorship ILICE*, 534 F.2d 836, 840 (9th Cir.1976). Thus, if Mathes cannot invoke the *Pennsylvania* Rule, he cannot invoke the negligence per se rule.

### IV

■ Mathes also challenges rulings of the district court limiting the testimony of two of his witnesses. Specifically, Mathes contends:

A. Captain John Blank should have been allowed to testify as to the scope of Coast Guard regulation:

B. Vincent Ochoa, a crewman aboard the Low Tide, should have been allowed to testify as to the custom and practice of loading operations; and

C. Blank should have been allowed to testify as to the duties of a captain to intervene and correct improper practices.[5]

A. The district court did not abuse its discretion in excluding testimony by Captain Blank that the Coast Guard manning regulations were designed to avoid acci-

---

3. On appeal, Mathes argues for the first time that Holzhauer's license to operate a vessel up to 300 gross tons did not qualify him to operate the Clipper Larry, a vessel of 100 tons. Because Mathes has failed to demonstrate exceptional reasons why the issue was not raised below, we decline to consider it. *Taylor v. Sentry Life Ins. Co.*, 729 F.2d 652, 655 (9th Cir.1984). On the face of it, however, we have difficulty seeing how a license to operate a vessel up to 300 gross tons would not qualify the operator to operate the Clipper Larry, a 100 ton vessel.

4. Mathes's reliance on *Waterman Steamship v. Gay Cottons*, 414 F.2d 724 (9th Cir.1969), is misplaced. There the causation requirement

for invocation of the *Pennsylvania* Rule was satisfied because, as this court said, "the failure to have an 'efficient' radio direction finder [as required by law] is sufficient to deny limitation of liability if it merely *combined* with the crew's negligence in using it to be one of the causes of the standing." *Id.* at 737 (emphasis in original).

5. Mathes also claims that Captain Blank should have been permitted to testify regarding the propriety of the stern approach of the Clipper Larry to the starboard side of the Low Tide. This claim is groundless. The district court reversed itself and permitted Captain Blank to testify at length on this matter.

dents resulting from an operator's unfamiliarity with the waters in which his vessel was operating. The interpretation of the regulations is not a question of fact for the jury to decide, but a question of law for the court to decide. *Markair, Inc. v. C.A.B.*, 744 F.2d 1383, 1385 (9th Cir.1984).

■ B. We also hold that the district court did not abuse its discretion in foreclosing cross-examination of Vincent Ochoa, the cook on the Low Tide who had previously worked as a deckhand, regarding the custom and practice of transferring items from one vessel to another.[6] The district judge ruled first, that the testimony was beyond the scope of cross-examination and second, that Mathes's offer of proof failed to show that Ochoa had sufficient experience to qualify him to testify "on whether you can come in stern to or what you can transfer." Ochoa did not testify on this subject during direct examination. More importantly, the offer of proof failed to indicate the frequency with which Ochoa had witnessed the transfer of items to a vessel that had come stern-to. The mere fact that he had observed the transfer of only small items under these conditions does not, standing alone, qualify him to testify that, as a matter of industry practice, large items were not transferred. We agree with the Fourth Circuit

> that habit or pattern of conduct is never to be lightly established, and evidence of examples, for purpose of establishing such habit, is to be carefully scrutinized before admission.... It is only when the examples offered to establish such pattern of conduct or habit are "numerous enough to base an inference of systematic conduct" ... that they are admissible to establish pattern or habit.

*Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494, 511 (4th Cir.1977) (quoting *Strauss v. Douglas Aircraft Co.*, 404 F.2d 1152, 1158 (2d Cir.1968) ), *cert. denied*, 434 U.S. 1020, 98 S.Ct. 744, 54 L.Ed.2d 768 (1978).

■ C. Mathes's sole theory of liability against defendant Western under the Jones Act is that the skipper of the Low Tide, Captain Levy, failed to stop him after observing him transfer packages from the Low Tide to the Clipper Larry in an unsafe manner. Mathes argues that Captain Blank should have been permitted to testify regarding the duty of a captain to intervene in such circumstances.

The district court excluded Captain Blank's testimony on this point because there was insufficient evidence to support a jury inference that Levy had observed Mathes when he was unloading the packages. *See* Fed.R.Evid. 104. Based upon our own review of the evidence, we agree with the district court that Mathes failed to prove the existence of a preliminary fact necessary to Blank's expert testimony on this point—that Levy had observed Mathes while he was on deck transferring the packages to the Clipper Larry. We agree with the district court that the only conceivable evidence of this preliminary fact is the testimony of the Low Tide's chief engineer, Brad Horton, that Levy was on deck for a matter of seconds. But Horton also testified that no loading was occurring at the time. Moreover, Levy's testimony that he did not see Mathes's unloading operation was supported by other witnesses, including James and Holzhauer from the Clipper Larry, who testified they did not see him on deck prior to the accident. Accordingly, we also agree with the district court that Horton's testimony is insufficient to support an inference "that Captain Levy could see what this operation was and what was going on, and should have then done something about it."

The judgment is AFFIRMED.

---

**6.** Mathes also claims on appeal that the district court committed error in refusing to permit Captain Blank to testify to this same issue. But we find nothing in the record indicating that any such testimony by Captain Blank was ever proffered by Mathes.