**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CHRISTOPHER MACDONALD,
      *Plaintiff-Appellant,*

v.

KAHIKOLU, LTD., doing business as
Frogman Charters,
      *Defendant-Appellee.*

No. 08-15239

D.C. No.
CV-02-00084-LEK

OPINION

Appeal from the United States District Court
for the District of Hawaii
Leslie E. Kobayashi, Magistrate Judge, Presiding

Argued and Submitted
June 12, 2009—San Francisco, California

Filed September 10, 2009

Before: Procter Hug, Jr., Betty B. Fletcher and
Michael Daly Hawkins, Circuit Judges.

Opinion by Judge B. Fletcher

## COUNSEL

John R. Hillsman, McGuinn, Hillsman & Palefsky, San Francisco, California; Howard G. McPherson, Cronin, Fried, Sekiya, Kekina & Fairbanks, Honolulu, Hawaii, for the plaintiff-appellant.

Richard C. Wootton and Mitchell S. Griffin, Cox, Wootton, Griffin, Hansen & Poulos, LLP, San Francisco, California, for the defendant-appellee.

## OPINION

B. FLETCHER, Circuit Judge:

For a second time, plaintiff Christopher MacDonald appeals the district court's judgment after a bench trial in his Jones Act suit against defendant Kahikolu, Ltd. MacDonald worked as a crew member aboard one of Kahikolu's ships and was injured while performing a "free dive," an underwater dive done on a single breath without scuba equipment or other underwater breathing apparatus. In a prior opinion, a separate panel of this court vacated the district court's judgment, and remanded for the district court to consider whether Kahikolu's failure to comply with Coast Guard regulations played any part in causing MacDonald's injuries. *See MacDonald v. Kahikolu Ltd.*, 442 F.3d 1199, 1200 (9th Cir. 2006). On remand, the district court held that Kahikolu's failure to comply with the regulations did not cause MacDonald's injuries and again entered judgment for the company. MacDonald appeals, arguing that the district court should have applied the rule from *The Pennsylvania*, 86 U.S. (1 Wall.) 125, 136 (1873), which puts on the ship owner the burden of proving that its violation of a statute or regulation did not cause the injury.

We have jurisdiction under 28 U.S.C. § 1291. Because we conclude that the *Pennsylvania* Rule does not apply here, we affirm.

## I.

The factual background is set forth in *MacDonald*, and we reprise it here only insofar as is necessary.

Kahikolu conducts whale watching, scuba, and snorkeling tours off the coast of Maui, Hawaii. *MacDonald*, 442 F.3d at 1200. MacDonald worked as a deck hand and lifeguard for Kahikolu and, as part of his job, periodically made free dives.

*Id.* On one outing, MacDonald was working aboard Kahikolu's *Frogman II* and undertook a free dive to retrieve a mooring line from the sea floor, a depth of about 46 feet. *Id.* However, as he descended to the sea floor, he injured his left ear trying to equalize the pressure in his ears.[1] *Id.* As a result, MacDonald had to be treated for permanent hearing loss, dizziness, and tinnitus. *Id.*

MacDonald sued Kahikolu, alleging a violation of the Jones Act, 46 U.S.C. § 30104, for failure to provide a safe work environment, among other claims.[2] *Id.* After a bench trial, the district court found that MacDonald was an experienced free diver who regularly had made many dives to depths of 30, 40, and 50 feet without ear pain or injury. *Id.* at 1201. The court also found that Kahikolu employees had made thousands of free dives without injury and that the activity was not inherently dangerous. *Id.* Although the court found that Kahikolu had inadequately trained MacDonald regarding free dives, the court ultimately found Kahikolu not negligent because it did not have notice of any unsafe condition. *Id.*

Before the district court and in his prior appeal, MacDonald argued that Kahikolu was negligent per se, because it had not complied with Coast Guard regulation 46 C.F.R. § 197.420(a)(1), which required the company to provide an

---

[1]Being underwater exerts pressure on a diver in excess of that at sea level, creating a pressure differential between the ambient environment and internal cavities such as the sinuses and middle ear. The pressure can be equalized using what is called the "Valsalva maneuver," which involves holding the nose and gently blowing. *See MacDonald*, 442 F.3d at 1200 n.2. Injury occurs if the diver blows too forcefully or too long. *Id.*

[2]The Jones Act provides that "[a] seaman injured in the course of employment or, if the seaman dies from the injury, the personal representative of the seaman may elect to bring a civil action at law, with the right of trial by jury, against the employer," under the same laws applying to such suits by railway employees, i.e., the Federal Employers' Liability Act, 45 U.S.C. § 51. 46 U.S.C. § 30104.

operations manual to the person in charge of the dive.[3] *Id.* at 1200. The district court rejected this theory, because it held that the regulations applied only to commercial scuba divers, not to free divers. *Id.* at 1201.

On appeal, we reversed the district court out of concern that

---

[3]46 C.F.R. § 197.420 states:

(a) The diving supervisor shall—

(1) Provide an operations manual to the person-in-charge prior to commencement of any diving operation; and

(2) Make an operations manual available at the dive location to all members of the dive team.

\* \* \*

(c) The operations manual must provide for the safety and health of the divers.

(d) The operations manual must contain the following:

(1) Safety procedures and checklists for each diving mode used.

(2) Assignments and responsibilities of each dive team member for each diving mode used.

(3) Equipment procedures and checklists for each diving mode used.

(4) Emergency procedures for—

(i) Fire;

(ii) Equipment failure;

(iii) Adverse environmental conditions including, but not limited to, weather and sea state;

(iv) Medical illness; and

(v) Treatment of injury.

(5) Procedures dealing with the use of—

(i) Hand-held power tools;

(ii) Welding and burning equipment; and

(iii) Explosives.

the court erred in failing to consider the applicability of *Kernan v. American Dredging Co.*, 355 U.S. 426 (1958). In *Kernan*, the Supreme Court held that under the Federal Employers' Liability Act and the Jones Act, an employer is liable for the injury or death of an employee if it is caused "in whole or in part[ ] by the employer's fault," including by breach of a common law or statutory duty. *Id.* at 432. *Kernan* thus dispenses with the traditional negligence per se requirement that the statute must be designed to prevent the kind of injury actually at issue. *See MacDonald*, 442 F.3d at 1203. Pursuant to *Kernan*, MacDonald would be entitled to recover damages if Kahikolu's violation played any part in causing his injury, no matter how slight. *Id.*

We remanded with the following instructions:

> The record shows that the commercial diving regulations expressly applied only to persons using underwater breathing apparatus and not to free divers. It is not clear, however, whether the district court applied the appropriate causation standard in determining that Kahikolu was not liable for Mr. MacDonald's injuries. Accordingly, we vacate the judgment and remand with instructions that the district court determine whether the failure of Kahikolu to comply with Coast Guard regulations played any part, " 'even the slightest,' " in producing Mr. MacDonald's injuries and enter a new judgment in accordance with that finding.

*Id.* (citation omitted).

On remand, the district court again found in favor of Kahikolu. While the regulations required Kahikolu to have a dive operations manual aboard the *Frogman II*, the district court found "little, if any, evidence to support Plaintiff's contention that the absence of a dive manual aboard the vessel contributed, even in the slightest, to Plaintiff's injuries."

According to the district court, the applicable regulations are "simply void of any discussion relating to free diving," so having an operations manual would not have affected what happened to MacDonald on his free dive. Thus, the district court concluded that Kahikolu's failure to comply with the applicable Coast Guard regulations did not play any part in producing MacDonald's injuries.

In so deciding, the district court declined to apply the *Pennsylvania* Rule, and alternatively held that even if the *Pennsylvania* Rule applied, Kahikolu had met its burden under the Rule. MacDonald now challenges those decisions.

## II.

We review the district court's conclusions of law, including whether the *Pennsylvania* Rule applies, de novo. *Ambassador Hotel Co. v. Wei-Chuan Investment*, 189 F.3d 1017, 1024 (9th Cir. 1999). Findings of fact following a bench trial are reviewed for clear error. *Id.* If the *Pennsylvania* Rule applies, application of the Rule to the facts is also reviewed for clear error. *See Churchill v. F/V Fjord*, 892 F.2d 763, 770 (9th Cir. 1988); *Trinidad Corp. v. S.S. Keiyoh Maru*, 845 F.2d 818, 827 (9th Cir. 1988).

## III.

The *Pennsylvania* Rule is a longstanding rule of admiralty law, and we have often applied it in this circuit. *See, e.g.*, *Exxon Co. v. Sofec, Inc.*, 54 F.3d 570, 577 (9th Cir. 1995); *Trinidad Corp.*, 845 F.2d at 825; *see also Mathes v. Clipper Fleet*, 774 F.2d 980, 982 (9th Cir. 1985) (listing cases). Under the Rule, if a vessel involved in an accident violated a statute or regulation intended to prevent such an incident, it is presumed that the ship owner was at fault, and the burden of proving causation shifts to the ship owner. *See The Pennsylvania*, 86 U.S. (19 Wall.) at 136. As the Supreme Court explained,

The liability for damages is upon the ship or ships whose fault caused the injury. But when, as in this case, a ship at the time of a collision is in actual violation of a statutory rule intended to prevent collisions, it is no more than a reasonable presumption that the fault, if not the sole cause, was at least a contributory cause of the disaster. In such a case, the burden rests upon the ship of showing not merely that her fault might not have been one of the causes, or that it probably was not, but that it could not have been.

*Id.* The Court justified imposing such a heavy burden by stating that the rule "is necessary to enforce obedience to the mandate of the statute."[4] *See id.* at 136.

**[1]** The burden imposed by the *Pennsylvania* Rule has been described as " 'difficult, if not impossible,' " to discharge. *Trinidad Corp.*, 845 F.2d at 825 (quoting *Ishizaki Kisen Co. v. United States*, 510 F.2d 875, 879 (9th Cir. 1975)). Nevertheless, the presumption is rebutted where the defendant shows by clear and convincing evidence that the violation could not reasonably be held to have been a proximate cause of the injury. *Id.* at 824 (quoting *States S.S. Co. v. Permanente S.S. Corp.*, 231 F.2d 82, 87 (9th Cir. 1956)).

It is undisputed that Kahikolu violated 46 C.F.R. § 197.420 by not having an operations manual aboard the ship at the time of MacDonald's accident. MacDonald also argues that Kahikolu failed to designate a "person-in-charge" of the vessel and a "diving supervisor," as required by 46 C.F.R. §§ 197.208(a) and 197.210(a).[5]

---

[4]The Rule now applies to violations of either statutes or regulations. *See Mathes*, 774 F.2d at 982 n.1.

[5]Under the regulations, the diving supervisor must be "fully cognizant of the provisions of the operations manual required by § 197.420" and is "in charge of the planning and execution of the diving operation including the responsibility for the safety and health of the dive team." 46 C.F.R. § 197.404(a)(2), (b).

Despite these regulatory violations, it is not clear that the *Pennsylvania* Rule applies to cases that do not involve a collision or other "navigational" accident, or to claims made under the Jones Act. In *Mathes*, we decided that the Rule did not apply to a personal injury claim brought by a plaintiff whose foot was pinned between two ships. 774 F.2d at 982-83. The crew member on one of the ships did not have a local endorsement aboard the ship, as required by Coast Guard regulations. *Id.* at 983. We declined to apply the Rule, because there was "no conceivable causal connection between the violation and the injury," and under the Rule, "if it clearly appears the fault could have had nothing to do with the disaster, it may be dismissed from consideration." *Id.* at 983 (citation omitted). We did not, however, explicitly address whether the *Pennsylvania* Rule could apply to cases that do not involve a collision or navigational accident, nor do any of our prior cases do so.[6]

Some other courts have applied the Rule broadly to noncollision and non-navigation cases. For example, the Third Circuit has stated that "[a]lthough the Rule originally applied only to collisions between ships, it has been reformulated to apply to any statutory violator who is a party to a maritime accident." *In re Nautilus Motor Tanker*, 85 F.3d 105, 113 (3d Cir. 1996) (citing *Pennzoil Producing Co. v. Offshore Express, Inc.*, 943 F.2d 1465, 1471 (5th Cir. 1991)); *see also United States v. Nassau Marine Corp.*, 778 F.2d 1111, 1116 (5th Cir. 1985) ("The Rule does not apply only to collisions."); *Reyes v. Vantage S.S. Co.*, 609 F.2d 140, 145-46 (5th Cir. 1980) (applying Rule to Jones Act man-overboard case);

---

[6]The Alaska Supreme Court in *Marine Solution Services, Inc. v. Horton*, 70 P.3d 393, 406-07 (Alaska 2003), interpreted *Mathes* as assuming that the Rule applies to Jones Act personal injury claims. However, the plaintiff in *Mathes* sought to apply the Rule to a third party, not to his employer, so it was not, strictly speaking, a Jones Act claim. *See Mathes*, 774 F.2d at 981-83. In any event, *Mathes* did not discuss at all whether the Rule did or should apply to personal injury claims and ultimately found that the Rule did not apply.

*In re Seaboard Shipping Corp.*, 449 F.2d 132, 136 (2d Cir. 1971) (applying Rule to man-overboard case and stating that defendant was wrong "in its contention that admiralty applies this rule only in collision cases"). However, beyond man-overboard cases, no court has applied the Rule to a Jones Act claim, except for the Alaska Supreme Court in *Horton*. 70 P.3d at 407. Indeed, although the Second Circuit applied the *Pennsylvania* Rule in *Seaboard Shipping*, a Jones Act case, it also stated in another Jones Act case—decided the same year as *Seaboard Shipping*—that it would not extend the Rule beyond "the chosen area of ship collisions." *Wilkins v. Am. Export Isbrandtsen Lines, Inc.*, 446 F.2d 480, 486 (2d Cir. 1971). It recently has reiterated its skepticism about whether the Rule should apply to Jones Act claims at all. *See Wills v. Amerada Hess Corp.*, 379 F.3d 32, 43-45 (2d Cir. 2004) ("Even if we were persuaded that *The Pennsylvania* Rule should be applied in some Jones Act cases, we would still decline to apply the rule in cases where, as here, it cannot be said with confidence that the plaintiff 's injury resulted from defendant's actions.").

**[2]** In this case, we need not decide how far the *Pennsylvania* Rule reaches beyond its traditional domain of ship collisions and navigational accidents, because even if the Rule applies to Jones Act claims, it would not apply here. All courts have consistently required that there be a threshold causal connection between the violation and the injury before the Rule will apply. *See, e.g.*, *Mathes*, 774 F.2d at 983; *Wills*, 379 F.3d at 44; *Seaboard Tug & Barge v. Rederi AB/Disa*, 213 F.3d 772, 775 (1st Cir. 1954); *Horton*, 70 P.3d at 407. In part, this has meant that the injury must be of the kind intended to be prevented by the statute or regulation that the defendant violated.[7] *See Wills*, 379 F.3d at 43 (holding that

---

[7] It is this requirement that illustrates one of the differences between the *Pennsylvania* Rule and negligence per se after Kernan. *Kernan* dispenses with the traditional negligence per se requirement that the statute must be designed to prevent the kind of injury actually at issue. *See MacDonald*,

application of the Rule is "limited to the violation of a statute intended to prevent the catastrophe which actually transpired"); *Nautilus Motor Tanker Co.*, 85 F.3d at 114 (requiring three elements to be met for the Rule to apply: "(1) proof by a preponderance of the evidence of violation of a statute or regulation that imposes a mandatory duty; (2) the statute or regulation must involve marine safety or navigation; and (3) the injury suffered must be of a nature that the statute or regulation was intended to prevent"); *Folkstone Mar., Ltd. v. CSX Corp.*, 64 F.3d 1037, 1047 (7th Cir. 1995) (adopting same); *Nassau Marine Corp.*, 778 F.2d at 1116 (stating that the Rule "generally has been limited, at least in cases not involving collisions and allisions, to violations of statutes intended to prevent the injury that actually occurred"); *see also* 2 Thomas J. Schoenbaum, Admiralty and Maritime Law § 14-3, at 102 (4th ed. 2004). Because the regulations here were not intended to protect against the injuries MacDonald suffered, the *Pennsylvania* Rule does not apply to Kahikolu, regardless of the extent of its reach.

**[3]** First, as the prior panel noted, "the commercial diving regulations expressly appl[y] only to persons using underwater breathing apparatus and not to free divers." *MacDonald*, 442 F.3d at 1203; *see* 46 C.F.R. §§ 197.202(a) (stating that regulations apply to commercial diving operations), § 197.204

---

442 F.3d at 1203. Thus, given the relaxed causation standard under the Jones Act, liability follows if there was a violation of any statute or regulation that played any part in producing the injury, even the slightest. The *Pennsylvania* Rule, by contrast, still retains the requirement that the statute be intended to protect against the type of injury that in fact occurred. Additionally, the *Pennsylvania* Rule does not establish negligence; it concerns itself only with the burden of showing causation. *See Mathes*, 774 F.2d at 983 ("The only relevant difference between the two theories is that the per se rule requires the plaintiff to prove causation whereas the *Pennsylvania* Rule shifts the burden of proof on causation to the defendant."). Assuming the Rule applied here, Kahikolu would have the burden of showing that its violation of the regulation did not play any part in causing MacDonald's injury.

(defining "commercial diving operation" as activities in support of a "commercial diver" and "diver" as someone "using underwater breathing apparatus"). So although the regulations concern an activity similar to free diving, they do not address free diving itself and are not intended to prevent injuries incurred while free diving.[8]

[4] Second, even insofar as a diving manual might possibly have some bearing on Kahikolu's free diving operations, it is not mandatory that the manual contain restrictions or protocol regarding free diving. This indicates both that the regulations were not intended to protect against MacDonald's injuries and that there is no causal relationship between the lack of a diving manual and MacDonald's injuries. The regulations require certain topics to be covered, such as safety procedures and pre-dive checklists, but these do not require the manual to address diving without any equipment or equalizing pressure in one's ears. *See* 46 C.F.R. § 197.420(c)-(d). MacDonald contends that if Kahikolu had adopted a manual, it would have imposed a depth restriction on free diving. But the regulations do not explicitly require this, and nothing in the substance of the regulations suggests that Kahikolu had a duty to impose such restrictions or any other diving procedure that would have prevented MacDonald's injury. *See id.* §§ 197.404, 197.410, 197.420. By contrast, for example, 46 C.F.R. § 197.430 imposes mandatory restrictions on scuba diving below 130 feet. *See id.* § 197.430(a). Since the *Pennsylvania* Rule is intended to enforce strict adherence to safety regulations and statutes, the Rule applies only when a statute or regulation actually imposes a mandatory duty. The regulations here do not do so; therefore, the Rule does not apply.

[5] We note finally that even if the Rule does apply, the

---

[8]While the regulations were probably designed in part to prevent barotrauma, their concern was with such injuries as suffered by scuba divers or others using underwater breathing apparatuses, not with free divers.

district court's assessment that Kahikolu had met its burden was not clearly erroneous. Kahikolu established that its employees had done numerous free dives before to a comparable depth without injury, and Kahikolu's expert testified that free diving is not per se unsafe. The district court did not clearly err in finding this to be clear and convincing evidence that the failure to have a manual could not reasonably have contributed to the injury. If Kahikolu had followed its own experience and its expert's opinion, it would not have put a depth restriction on free dives. *See Pacific Tow Boat Co. v. States Marine Corp.*, 276 F.2d 745, 749 (9th Cir. 1960) (stating that the Rule "do[es] not require the vessel guilty of a statutory fault to prove that its fault could not by any stretch of the imagination have had any causal relation to the collision no matter how speculative, improbable, or remote"). MacDonald's expert testified to the contrary, but even if the *Pennsylvania* Rule had shifted the burden of proof to Kahikolu, this shift would not have required the district court to find for MacDonald simply because the experts had contradictory opinions; the Rule requires only that Kahikolu present clear and convincing evidence sufficient to carry its burden of persuasion. There is no indication that the district court clearly erred in crediting Kahikolu's expert over MacDonald's, especially given their relative levels of experience with free diving.

[6] The prior panel remanded this case "for the limited purpose of having the district court make a finding as to whether Kahikolu's failure to provide an operations manual to the person-in-charge of the *Frogman II* vessel . . . played any part in producing the injury, no matter how slight, to Mr. MacDonald." *MacDonald*, 442 F.3d at 1200. Although it did not expressly mention the *Pennsylvania* Rule, the court did not require the district court to apply the Rule, and for good reason: regardless of the kinds of claims to which the Rule might apply, it does not apply here. The district court correctly followed our instructions on remand; the judgment below is

**AFFIRMED.**